Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
David C. Leimbach, Esq. (SBN: 265409)
dleimbach@westcoastlitigation.com
**HYDE & SWIGART**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone:   (619) 233-7770
Facsimile:    (619) 297-1022

Attorneys for the Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Ramon Gutierrez and Clariza Gutierrez**, on behalf of themselves and all others similarly situated<br><br>                    Plaintiffs,<br><br>v.<br><br>**Barclays Group, d.b.a., Barclaycard, d.b.a., Barclays Bank, d.b.a., Barclays Bank Delaware, d.b.a., Barclays Bank of Delaware, N.A., Barclaycard Funding, PLC a Delaware Corporation**.<br><br>                    Defendant. | Case Number: 10-cv-1012 DMS BGS<br><br>**PLAINTIFFS RAMON AND CLARIZA GUTIERREZ'S OPPOSITION TO DEFENDANT BARCLAYS BANK DELAWARE'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF CLAIMS**<br><br>Judge: Hon. Dana M. Sabraw<br>Date: February 4, 2011<br>Time: 1:30 p.m.<br>Ctrm.: 10 |

**HYDE & SWIGART**
San Diego, California

TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................1

II.     FACTUAL BACKGROUND ...................................................................2

        A.   RAMON GUTIERREZ APPLIES FOR A JUNIPER BRANDED
             CREDIT CARD WITH BARCLAYS .............................................2

        B.   AUTOMATED CALLS AND PRERECORDED MESSAGES ARE PLACED TO THE
             CELLULAR TELEPHONES OF RAMON AND CLARIZA GUTIERREZ .................3

        C.   ON NUMEROUS OCCASIONS, RAMON AND CLARIZA GUTIERREZ EXPRESSLY TOLD
             DEFENDANT TO STOP CONTACTING THEIR CELLULAR TELEPHONES WITH
             AUTOMATED OR PRERECORDED MESSAGES ........................................4

III.    LEGAL STANDARD FOR SUMMARY JUDGMENT ...................................5

IV.     ARGUMENT ....................................................................................5

        A.   DEFENDANT'S ARGUMENT THAT THE TCPA REQUIRES THE CONSUMER BE
             CHARGED FOR IS UNTENABLE .............................................5

        B.   EVEN ASSUMING, *ARGUENDO,* THAT RAMON GUTIERREZ GAVE PRIOR EXPRESS
             CONSENT AT SOME POINT, HE SUBSEQUENTLY AND PROPERLY REVOKED THAT
             CONSENT BUT CONTINUED TO RECEIVE ILLEGAL CALLS .........................9

        C.   DEFENDANT'S ARGUMENT THAT CLARIZA GUTIERREZ LACKS STANDING TO
             ASSERT A CLAIM UNDER THE TCPA BECAUSE DEFENDANT CLAIMS TO HAVE
             "INTENDED" TO CALL RAMON GUTIERREZ IS MERITLESS .....................10

             1.   The Cases Cited By Defendant Are Distinguishable And Provide Little
                  Guidance On Plaintiffs' Claims .................................13

             2.   Defendant Intended To Call Clariza Gutierrez ...........................17

        D.   CLARIZA GUTIERREZ NEVER PROVIDED EXPRESS CONSENT TO
             RECEIVE CALLS TO HER CELLULAR TELEPHONE FROM DEFENDANT'S
             AUTOMATIC DIALING SYSTEM ...........................................18

             1.   Because Clariza Never Gave Her Cellular Telephone Number To
                  Defendant, Either Orally or in Writing, Clariza Could Not Have Given
                  Prior Express Consent .............................19

        E.   BECAUSE PRIOR EXPRESS CONSENT ONLY NEED BE REVOKED ORALLY, EVEN IF
             CLARIZA GUTIERREZ CONSENTED TO THE CALLS, SHE EFFECTIVELY REVOKED
             SAID CONSENT ...........................................22

V.      CONCLUSION ...........................................25

HYDE & SWIGART
San Diego, California

# TABLE OF AUTHORITIES

## CASES

*Abbas v. Selling Source, LLC*
     No. 09 C 3413, 2009 WL 4884471 (N.D. Ill. Dec. 14, 2009) ................................6

*Adickes v. S.H. Kress & Co.*,
     398 U.S. 144 (1970). ................................................................................5

*Altman v. Inside Edge LTD,*
     Case No. 03-AC-020374-S-CV (Div. 39, Missouri, Aug. 2, 2004) ....................11

*Anderson v. Liberty Lobby, Inc.*,
     477 U.S. 242 (1986). .........................................................................5, 18

*Azure v. Morton,*
     514 F.2d 897 (9th Cir. 1975) ................................................................6

*BedRoc Ltd., LLC v. United States,*
     541 U.S. 176 (2004) ..........................................................................13

*Cadsoft Corp. v. Riverdeep,* LLC,
     2007 U.S. Dist. LEXIS 39559 (N.D. Cal.  2007).......................................20

*CE Design, Ltd. v. Prism Bus. Media, Inc.*,
     606 F.3d 443, 449-50 (7th Cir. 2010)...............................................23, 24

*Celotex Corp. v. Catrett,*
     477 U.S. 317 (1986). ..........................................................................5

*Charvat v. AT&T Corp.,*
     No. 98 Civ. 9334, 1999 TCPA Rep. 1005 (Ohio Ct. Com Pl. Nov. 30, 1999). ...............12

*Clark v. Capital Credit & Collection Servs., Inc.*,
     460 F.3d 1162 (9th Cir. 2006) ............................................................13

*Cellco Partnership v. Dealers Warranty LLC*
     2007 U.S. Dist. LEXIS 39559  (N.D. Cal.  2007).  ..........................................16

*Conn. Nat'l Bank v. Germain,*
     503 U.S. 249 (1992))...........................................................................13

*Consumer.Net v. AT&T Corp.*
     15 F.C.C.R. 281 (1999) ................................................................10, 14, 15

HYDE & SWIGART
San Diego, California

*Dawson v. Am. Dream Home Loans,*
    No. 06 Civ. 513, 2006 WL 2987104 (Ohio Ct. Com. Pl. Oct. 4, 2006) ............................11

*Duncan v. Walker,*
    533 U.S. 167 (2001) ............................................................................................11

*Fortyune v. American Multi-Cinema, Inc.,*
    364 F.3d 1075 (9th Cir. 2004). .............................................................................5

*Goldberg v. Empire mortgage,*
    Case No. 04-cv-h-03-3435
    (Franklin County Court of Common Pleas, Dec. 7, 2004). .............................12

*Kopff v. World Research Group, LLC,*
    568 F. Supp 2d 39 (D.D.C. 2008) .........................................................................15

*Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.,*
    No. 08-cv-481, 2009 WL 602019 (W.D. Wis. Mar. 9, 2009) ...............................5

*Leyse v. Bank of America, N.A.,*
    2010 WL 2382400 (S.D.N.Y. June 14, 2010) ........................................ 14, 15, 16

*Long v. County of Los Angeles,,*
    442 F.3d 1178 (9th Cir. 2006) .................................................................................5

*Lozano v. Twentieth Century Fox Film Corp.*
    No. 09 C 6344, 2010 WL 1197884 (N.D. Ill. Mar. 23, 2010). ............................ 6

*McDonald v. Sun Oil Co.,*
    548 F.3d 774 (9th Cir. 2008) ...............................................................................12

*Melingonis v. Network Comm. Int'l. Corp.,*
    2010 TCPA Rep. 2060, 2010 WL 4918979 (S.D. Cal. Nov. 29, 2010)...............9

*Mitchem v. Illinois Collection Service, Inc.*
    2010 WL 3003990 (N.D. Ill., 2010 July 29)........................................................6

*Nissan Fire & Marine Ins. Co. v. Fritz Companies,*
    210 F.3d 1099 (9th Cir. 2000) ................................................................................5

*Northwest Forest Resource Council v. Glickman,*
    82 F.3d 825 (9th Cir. 1996) ....................................................................................6

*Reichert v. National Credit Systems, Inc.*
    531 F.3d 1002 (9th Cir, 2008). ............................................................................10

HYDE & SWIGART
San Diego, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Resource Bankshares Corp., v. St. Paul Mercury Ins. Co.,*
 407 F. 3d 631 (4th Cir. 2005) ...............................................................9

*Satterfield v. Simon & Schuster, Inc.,*
 569 F.3d 946 (9th Cir. 2009) .......................................................20, 21

*Soremekun v. Thrifty Payless, Inc.,*
 509 F.3d 978 (9th Cir. 2007). ............................................................5

*Starkey v. Firestone Advantage, LLC,*
 2010 WL 2541756 (W.D.N.Y. Mar. 11, 2010) ..............................23, 24

*Stegall v. Citadel Broad, Inc.,*
 350 F.3d 1061 (9th Cir. 2003) ............................................................5

*Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn.,*
 322 F.3d 1039 (9th Cir. 2002) ............................................................5

### STATUTES

15 U.S.C. § 1692c(c) ...........................................................................23

15 U.S.C. § 1692a(6) . .........................................................................24

47 U.S.C. § 227 *et seq.,* (the "TCPA").............................................passim

Fed. R. Civ. P. 56(c) ..............................................................................5

### OTHER AUTHORITIES

In the Matter of Rules and Regulations Implementing the
Telephone Consumer Protection Act of 1991, Report and Order,
7 F.C.C.R. 8752 (1992) (the "1992 FCC Order").............................passim

In the Matter of Rules and Regulations Implementing the Telephone
Consumer Protection Act of 1991, Declaratory Ruling,
23 F.C.C.R. 559 (2007) (the "2008 FCC Order"). ...........................passim

Norman J. Singer, Sutherland on Statutory Construction § 47.33 (4th ed. 1985)............................6

Rules and Regulations Implementing The Telephone Consumer
Protection Act of 1991, CG Dock. No. 02-278, par. 160 (2003)(2003 Report)..............................8

Rules and Regulations Implementing the Telephone Consumer Protection
Act of 1991, Notice Of Proposed Rule making and Memorandum
Opinion and Order, CG Docket No. 92-90, par. 45 (2002) ...........................8

HYDE & SWIGART
San Diego, California

## I.  INTRODUCTION

A basic understanding of the developing bodies of authority under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (hereinafter referred to as the "TCPA"), as well as the facts material to this case demonstrate the untenable nature of Barclays Bank Delaware's ("Defendant") Motion for Summary Judgment ("Defendant's Motion").  Defendant repeatedly states certain facts are "beyond dispute" when, in reality, these issues are clearly disputed and unsuitable for disposition on summary judgment.  Further, Defendant's Motion presents pages of purported facts that are simply immaterial to applicable legal standards[1], and occasionally constitute an admission of liability under the TCPA.

Defendant seeks dismissal of Plaintiff's claims on four theories: (1) Defendant had the requisite prior express consent from Plaintiff Ramon Gutierrez to use an automatic telephone dialing system to send pre-recorded calls and text messages to his cellular telephone; (2) Defendant had prior express consent to send calls to Plaintiff Clariza Gutierrez's cellular telephone, and Clariza Gutierrez never properly revoked said consent; (3) Clariza Gutierrez lacks standing to assert claims under the TCPA as she was not the "intended recipient" of the calls; and (4) that even if there was no prior express consent for either plaintiff, Plaintiffs have no claims under the TCPA because they were not charged for the calls placed to their cellular telephones.

Each argument is legally or factually incorrect.  Even if Ramon Gutierrez had initially given prior express consent, such consent was subsequently revoked and Defendant continued to place automated text messages to his cellular telephone. With regard to Clariza Gutierrez, Defendant's argues the novel and indeed, illogical idea that prior express consent to contact one individual can be obtained from a third party.  Defendant presents this argument in a cloud of

---

[1] For instance, Defendant has maintained throughout this litigation - both in its Motion and throughout the discovery process in refusing to respond to Plaintiff's discovery requests - that they do not request cellular telephone numbers, and do not have the means to determine if they are calling a cellular telephone number.  Aside from the fact that this information is simply irrelevant in the liability analysis under the TCPA, it's notable that Plaintiff Ramon Gutierrez represents a class of individuals who received text messages on their cellular telephones.  Surely, Defendant is not attempting to send text messages to landlines.  The obvious explanation is, of course, that Defendant specifically targets cellular telephones in its collection efforts, despite the fact that their application does not request a cellular telephone number.

HYDE & SWIGART
San Diego, California

irrelevant facts relating to Clariza Gutierrez's apparent role as the household manager of finances, but ignores the indisputable fact that Clariza Gutierrez's simply never gave her cellular telephone number to Defendant.

Finally, Defendant suggests the attenuated proposition that TCPA liability may be avoided if Defendant merely claims their subjective intent was to contact one person (a non-subscriber to the called number) while repeatedly calling another person (the actual subscriber to the telephone line), and the called party, on multiple occasions, informed Defendant that they were calling a number that did not belong to the person Defendant claims to have intended to speak with.  This flies in the face of common sense and the most basic cannons of statutory construction.  Further, such a holding would eviscerate the policy goals of the TCPA in protecting telephone subscribers from unwanted calls to their cellular telephones by creating the virtually irrefutable defense that Defendant was trying to reach "someone else."   Defendant's remaining arguments accomplish little more than misstate the law through errors in statutory construction or rely on inapposite analogies to distinguishable cases.

## II.   FACTUAL BACKGROUND

### A.   RAMON GUTIERREZ APPLIES FOR A JUNIPER BRANDED CREDIT CARD WITH BARCLAYS

On September 24, 2008, Ramon Gutierrez filled out an electronic on-line application to open a "Juniper" branded credit card account with Barclays (the "Account Application"). Plaintiff's Response To Statement of Undisputed Material Fact ("PRSUMF") No. 1; Dec. of Ramon Gutierrez ("Ramon Dec.") ¶ 1.   On the Account Application, Ramon Gutierrez was listed as the primary account holder, and did not list any authorized users.   PRSUMF No. 6; Ramon Dec., ¶ 2.     On the Account Application, Ramon Gutierrez listed his cellular telephone number, 909-702-7913 (the "7913 Number"), and Clariza Gutierrez's cellular telephone number, 909-702-5919 (the "5919 Number").   PRSUMF Nos. 2, 4.     Ramon Gutierrez never sought permission from Clariza Gutierrez to place her cellular telephone number on the Account Application, and Clariza Gutierrez never gave Ramon Gutierrez consent to provide her cellular

telephone on the Account Application[2].     PRSUMF No. 11; Declaration of Clariza Gutierrez ("Clariza Dec.") ¶¶ 5, 6; Declaration of David C. Leimbach (hereinafter "Leimbach Dec."), Ex. J, 54: 3-10; 66: 19-22.

### B. AUTOMATED CALLS AND PRERECORDED MESSAGES ARE PLACED TO THE CELLULAR TELEPHONES OF RAMON GUTIERREZ AND CLARIZA.

On numerous occasions over several weeks, Ramon Gutierrez and Clariza Gutierrez received dozens of automated and prerecorded calls and text messages.  Ramon Dec., ¶ 4; Clariza Dec. ¶ 1.  Defendant intended to contact *both* Clariza and Ramon Gutierrez in an effort to collect upon the alleged debt.[3]  Clariza Dec. ¶ 2; Leimbach Dec., Ex. J, 74: 15-19.   At the time Ramon and Clariza Gutierrez received these calls, Ramon Gutierrez did not have an unlimited text message plan with his cellular telephone carrier, AT&T, and Clariza Gutierrez did not have unlimited calls with her cellular telephone carrier, AT&T.   PRSUMF No. 15; Ramon Dec., ¶ 5; Clariza Dec. ¶ 7.   Thus, both Ramon and Clariza Gutierrez were charged in the form of reduced air time and text messages by receiving Defendant's automated and prerecorded calls.

Clariza Gutierrez received dozens of automated and prerecorded calls to her cellular telephone between in April and May of 2010. Clariza Dec., ¶ 1.   At no time did Clariza ever provide her cellular telephone number to Defendant.   Clariza Dec., ¶ 3.   Ramon Gutierrez also

---

[2] Clariza Gutierrez Deposition ("CG Dep.") 54: 3-7, Ex. J to Leimbach Dec.:
> Q: Did you allow Ramon to provide that cell phone number to his various credit card companies so they could contact you?
> A: I never allowed him to for any specific credit card, but I knew he was my husband.

CG Dep. 66: 19-21, Ex. J to Leimbach Dec.:
> Q: Do you know if Ramon provided Barclays Bank with your cell phone number?
> A: I don't know.

[3] CG Dep. 74: 15-22, Ex. J to Leimbach Dec.:
> Q: Okay.  Were they trying to call you for payment?
> A: Yes.
> Q: They called Clariza for payment?
> A: Yes.

Transcript of April 29, 2010 Call between Plaintiff and Defendant, Leimbach Dec., Ex. B:
> Defendant:  Let me ask, have you already made the payment on this account
> Clariza:  We are not gonna make payments on this account.
> Defendant: Then expect another phone call ma'am, have a great day.

HYDE & SWIGART
San Diego, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

received several automated/prerecorded calls to his cellular telephone, as well as automated text messages to his cellular phone in and around April and May of 2010.  Ramon Dec., ¶ 4.

### C. ON NUMEROUS OCCASIONS, RAMON AND CLARIZA GUTIERREZ EXPRESSLY TOLD DEFENDANT TO STOP CONTACTING THEIR CELLULAR TELEPHONES WITH AUTOMATED OR PRERECORDED MESSAGES

Between Clariza and Ramon Gutierrez's combined efforts, the Gutierrez's informed Defendant almost a dozen times that they did not have consent to be contacting their cellular telephones with automated or prerecorded messages - both orally <u>and</u> in writing.  *See,* Clariza Dec. ¶ 4; Ramon Dec. ¶ 6; Exhibits A-K, inclusive.   These requests were ignored.  In one glaring example, Defendant sent Ramon Gutierrez a text message on his cellular telephone, which asked Ramon if he wanted to stop these calls:

> FREE alert: Courtesy reminder for your Juniper Bank Mastercard.  Please press SEND 866-740-4298 to speak to us.  Reply STOP to end messages.

PRSUMF No. 17; Ramon Dec., ¶ 6; Defendant's Motion, 6: 6-13; Leimbach Dec., Ex. J.   Ramon Gutierrez *did* want the calls to stop, followed Defendant's instructions to the letter and replied "STOP" in response to the above text message.  Ramon Dec., ¶ 6; Defendant's Motion, 6: 6-13; Leimbach Dec., Ex. J.  Defendant, however, ignored Ramon Gutierrez's demand and *again* sent him another text message.  Ramon Dec., ¶ 6; Defendant's Motion, 6: 6-13; Leimbach Dec., Ex. J.

Defendant also continued to place automated and prerecorded calls to Clariza Gutierrez's cellular telephone after she repeatedly informed Defendant that: (1) Defendant was not calling a landline telephone number; (2) Defendant was calling Clariza's cellular telephone number; (3) Defendant did not have Clariza's consent to be contacting her cellular telephone number; and (4) Defendant is to cease and desist from contacting her cellular telephone number.  Clariza Dec. ¶  4; Leimbach Dec., Ex. A- H, inclusive.  Clariza clearly communicated this information to Defendant on no less than <u>eight</u> occasions.  *Id.*  Indeed, Defendant understood this information, as Defendant actually recorded this demand by Clariza in Defendant's collection notes. (Filed under seal as attachment to Declaration of Michael Liu).

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L. Ed. 2d 142 (1970); *Fortyune v. American Multi-Cinema, Inc.,* 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986); *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007).   If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).

A fact is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986); *Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn.*, 322 F.3d 1039, 1046 (9th Cir. 2002).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986); *Long v. County of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir. 2006).   The evidence of the *opposing* party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986); *Stegall v. Citadel Broad, Inc.*, 350 F.3d 1061, 1065 (9th Cir. 2003).

### IV.   ARGUMENT

#### A.   DEFENDANT'S ARGUMENT THAT THE TCPA REQUIRES THE CONSUMER BE CHARGED FOR THE CALLS IS UNTENABLE

The TCPA is clear: *all* calls made to a cellular telephone using an automatic telephone dialing system without the prior express consent of the person being called are forbidden.  This is without regard to whether the recipient incurs a charge for that call.  *See,* 47 U.S.C. 227(b)(1)(B); *Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.,* No. 08-cv-481, 2009 WL 602019, at *3 (W.D.

Wis. Mar. 9, 2009) (The called party has standing to bring suit against a person or entity that violates the TCPA, even if the called party has suffered no actual harm.); *Mitchem v. Illinois Collection Service, Inc.* 2010 WL 3003990 (N.D. Ill., 2010 July 29) ("The TCPA does not require plaintiff to allege that he was charged for the individual collection calls to state a claim."); *Lozano v. Twentieth Century Fox Film Corp.,* No. 09 C 6344, 2010 WL 1197884, at *9 (N.D. Ill. Mar. 23, 2010) ("[T]he plain language of the TCPA does not require plaintiff to allege that he was charged for the relevant call at issue in order to state a claim pursuant to section 227 of the TCPA."); *Abbas v. Selling Source, LLC,* No. 09 C 3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009) (same).

Indeed, the plain language of the TCPA provides it is illegal to make *any* call using an ATDS:

> to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227 (b)(1)(A)(iii).  Defendant, however, argue that the phrase, "for which the called party is charged for the call," applies to all four categories of calls[4] that go before it.   That argument violates every tenet of statutory construction, including the doctrine of the last antecedent and the doctrine of interpreting disjunctives.

The "doctrine of last antecedent" stands for the proposition that "where one phrase of a statute modifies another, the modifying phrase applies only to the phrase immediately preceding it." *See, Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 832 (9th Cir. 1996) ("We have long followed this interpretive principle."), citing Norman J. Singer, Sutherland on Statutory Construction § 47.33 (4th ed. 1985) ("[Q]ualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent.") So, too, with the disjunctive "or" that precedes the phrase, "or any service for which the called party is charged for the call." As the Court in *Azure v. Morton,* 514 F.2d 897, 900 (9th Cir. 1975) observed, "[a]s a general rule, the use of a disjunctive in a statute indicates alternatives and requires that they be treated separately."

---

[4] The statute prohibits calls to any telephone number assigned to (1) a paging service, (2) cellular telephone service, (3) specialized mobile radio service or other radio common carrier service, or (4) any service for which the called party is charged for the call.

HYDE & SWIGART
San Diego, California

These rules would be dispositive even without referencing 47 U.S.C. § 227(b)(2)(C), which provides:

> The Commission may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights this section is intended to protect.

If the TCPA applied only to calls for which the recipient was charged, as Defendants argue, Section 227(b)(2)(C) would be superfluous.   There would be no reason for the FCC to "exempt from the requirements" of the statute calls for which the recipient was not charged if the statute did not even cover calls of that type.   Defendants urge a reading of the statute that simply cannot be squared with the plain words of the statue, settled rules of statutory construction, or the rest of the statute.  *See, Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (citations omitted).

The FCC has consistently ruled that the only calls exempted from the reach of the statute are those sent by cellular carriers to their own subscribers.  Under 47 U.S.C. § 227(b)(2)(C), no-charge calls are subject to the constraints of the TCPA unless the FCC explicitly exempts them. Relying on a 1992 FCC Report and Order, Defendants suggest that the FCC did, in fact, exempt the type of calls in question here. (Def. Mtn. at 15:1-16.)   In suggesting this, Defendants ignore conclusive evidence to the contrary.

In 1992, the FCC was looking at a relatively narrow issue, *i.e.*, whether calls *made by cellular carriers to their own customers* were under the purview of the TCPA.   The FCC concluded that so long as the customers were not charged for those calls, such calls fall outside of the statute. In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 7 F.C.C.R. 8752 (1992) (the "1992 FCC Order") para. 45. Defendants attempt to use this ruling as a basis to conclude that *all* no-charge calls -- regardless of the identity of the caller -- are exempted from the TCPA. That is not the case.

HYDE & SWIGART
San Diego, California

In 2002 and 2003, the FCC explicitly dealt with this issue. As it first explained in a 2002 notice, its 1992 report was limited to calls made by cellular carriers; it then gave notice and sought comment on whether that ruling should be *expanded* to include *all* no charge calls:

> In the [1992] TCPA Order, the Commission concluded that calls made by cellular carriers to their subscribers for which the subscribers were not charged do not fall within the prohibitions on autodialers or prerecorded messages. We seek comment on whether there are ***other*** types of calls to wireless telephone numbers that are not charged to the called party, and whether such calls *also* should not fall within the prohibitions on autodialers or prerecorded messages.

*See*, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Notice Of Proposed Rule making and Memorandum Opinion and Order, CG Docket No. 92-90, par. 45 (2002) (emphasis supplied) In its 2003 Report, the FCC emphasized the issue:

> In the 2002 Notice, the Commission noted that the TCPA permits the Commission to exempt from the restrictions on autodialer or prerecorded message calls, "calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights [the TCPA] is intended to protect." In the 1992 TCPA Order, the Commission concluded that calls made ***by cellular carriers*** to their subscribers for which the subscribers were not charged do not fall within the prohibitions on autodialers or prerecorded messages. We sought comment on the extent to which telemarketing to wireless consumers exists today and if so, the nature and frequency of such solicitations. We asked whether there are other types of calls to wireless telephone numbers that are not charged to the called party, and whether such calls also should not fall within the prohibitions on autodialers or prerecorded messages.

*See*, Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991, CG Dock. No. 02-278, par. 160 (2003)(2003 Report) (emphasis in original), and was equally clear in its answer - it decided *not* to extend the no-charge exemption to other calls:

> We affirm that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number.

*Id.*, par. 165 (emphasis in original). Defendants simply cannot credibly argue that there is any "charge" requirement in order to make out a TCPA violation. However, even if that were not the case, here it is equally clear that there *were* charges in connection with the calls in question.[5]

[5] At the time the calls took place, Plaintiff Clariza Gutierrez did not have an unlimited calling plan, and Plaintiff Ramon Gutierrez did not have an unlimited text messaging plan. *See,* Ramon Dec. ¶ 5; Clariza Dec. ¶ 7.

**B.     EVEN ASSUMING, *ARGUENDO*, THAT RAMON GUTIERREZ GAVE PRIOR EXPRESS CONSENT AT SOME POINT, HE SUBSEQUENTLY AND PROPERLY REVOKED THAT CONSENT BUT CONTINUED TO RECEIVE ILLEGAL CALLS**

As it relates to Ramon Gutierrez, Defendant's Motion makes a fatal admission of liability. Even though any revocation of prior express consent under the TCPA does not have to be in writing, *see supra,* Section IV.E., Ramon Gutierrez sent Defendant a written request to stop sending text messages to his cellular telephone, and Defendant continued to illegally send him text messages.     *See,* Leimbach Dec., Ex. J; Ramon Dec., ¶ 6.  As Defendant's Motion admits: "[O]nce Ramon Gutierrez elected to stop the text messages to the 7913 Number by replying "STOP," Barclays *confirmed* that the 7913 will receive no further text messages …"  (emphasis added).   When Defendant says "confirmed," however, what Defendant means is that Barclays sent Ramon Gutierrez yet another text message. Ramon Dec., ¶ 6; Leimbach Dec., Ex. J.  It does not matter if this text message was "confirmation" that Defendants would stop sending text messages.   The TCPA does not concern itself with the content of a message, instead looking only at whether a message was sent. *See,* In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling, 23 F.C.C.R. 559, (2007) (the "2008 FCC Order") p. 11 (the prohibition against the use of automatic telephone dialing systems to make calls to cellular telephones "applies regardless of the content of the call"); *See also, Melingonis v. Network Comm. Int'l. Corp.,* 2010 TCPA Rep. 2060, 2010 WL 4918979 (S.D. Cal. Nov. 29, 2010) ("We note that this prohibition applies regardless of the content of the call, and is not limited only to calls that constitute 'telephone solicitations.'"); *Resource Bankshares Corp., v. St. Paul Mercury Ins. Co.,* 407 F. 3d 631, 642 (4th Cir. 2005) ("[T]he TCPA's unsolicited fax prohibition protects "seclusion" privacy, for which content is irrelevant.").   Indeed, it is not the content of the communication, but rather the communication itself from which the TCPA seeks to protect the cellular telephone-owning recipient.

Here, Defendant does not dispute that they were sending Ramon Gutierrez text messages. Defendant does not dispute that that Ramon Gutierrez replied to one of these text messages by writing "stop," which was responsive to a query of whether Ramon Gutierrez would consent to continued text messaging to his cellular telephone.   Defendant does not dispute that Ramon's

written reply was an effective written withdrawal of prior express consent (even though *written* revocation is not actually required).   And finally, Defendant does not dispute that after they received this written request to stop text messaging his cellular telephone, they sent Ramon yet another text message.  This "confirmatory" text message is a clear violation of the TCPA.[6]

## C.   DEFENDANT'S ARGUMENT THAT CLARIZA GUTIERREZ LACKS STANDING TO ASSERT A CLAIM UNDER THE TCPA BECAUSE DEFENDANT CLAIMS TO HAVE "INTENDED" TO CALL RAMON GUTIERREZ IS MERITLESS

Defendant has presented this Court with the wildly attenuated notion that if Defendant merely claims to have subjectively "intended" to contact Ramon, and not Clariza, that only Ramon could possibly have standing to assert TCPA a claim against Defendant[7] - despite the fact that Defendant placed dozens of automated calls to Clariza's cellular telephone (a number which is exclusively used by, and subscribed to, Clariza).  This is both legally and factually incorrect.[8]

First, the FCC has specifically rejected this specious argument as it applies to the TCPA. In the matter of *Consumer.Net v. AT&T Corp.,* 15 F.C.C.R. 281 (1999), the Federal Communications Commission addressed this same issue in the context of "do-not-call" lists under

_____

[6] This scenario is no different than a party who previously gave his cellular telephone number to a creditor was receiving automated calls subsequently wrote a letter to the creditor requesting they stop placing calls to his cellular telephone, and the creditor, upon receipt of the letter, placed yet another automated call to her cellular telephone informing her she would no longer receive automated calls.  Once prior express consent is revoked, that creditor cannot place any automated calls to that persons cellular telephone, regardless of content or purpose.  *See, supra,* Section IV.B

[7] Surely, Defendant is not suggesting that Ramon has standing to challenge the calls placed to Clariza's cellular telephone.   If somehow this be the case, then Plaintiffs' complaint, as it is currently pled, still proposes that Ramon Gutierrez represents classes of individuals who received automated and prerecorded calls on their cellular telephone.  Furthermore, to the extent Ramon would be deemed to have given consent to receive calls to Clariza's cellular telephone number, such consent was clearly revoked, and Defendant continued to place calls to that cellular telephone number.  *See,* supra Section IV.E., fn. 13.

[8] If Defendant could merely assert that it "intended" to call Ramon Gutierrez and not Clariza Gutierrez, it would leave the TCPA toothless.  The Ninth Circuit has rejected such arguments in other types of actions and such analysis should apply here.  See *Reichert v. National Credit Systems, Inc.* 531 F.3d 1002 (9th Cir, 2008)(" If the bona fide error defense [in the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq.] is to have any meaning in the context of a strict liability statute, then a showing of "procedures reasonably adapted to avoid any such error" must require more than a mere assertion to that effect.)

HYDE & SWIGART
San Diego, California

the TCPA.   The Commission held that the TCPA's do-not-call provisions apply to specific telephone numbers, rather than an individuals name associated with a particular telephone number in a defendant's records.  In *Consumer.Net,* a husband's do-not-call request was violated when the defendant subsequently called the same telephone line, even though the defendant alleged it was calling his wife.   *Id.* at Para. 35.   The Commission rejected what Defendant argues here, unequivocally stating that "[t]he placement of the number on the do-not-call list may not be circumscribed by the telemarketers claim that it was trying to reach someone else at the same number." *Id.* at Para. 36.   The Commission elaborated, stating that such an interpretation of the TCPA would "eviscerate the policy goals of the statute in protecting telephone subscribers from unwanted telemarketing calls by creating the virtually irrefutable defense that the telemarketer trying to reach 'someone else' at that number." *Id.* Para. 37.   This is completely analogous to the facts of this case.   It is irrelevant that Defendant claims their records show Ramon's name is associated with a telephone number subscribed to Clariza.   The only relevant fact is *whose* telephone number Defendant is contacting, i.e., who subscribes to the telephone number.

Similarly, in another TCPA case dealing with similar issues, *Altman v. Inside Edge LTD,* Case No. 03-AC-020374-S-CV (Div. 39, Missouri, Aug. 2, 2004), the court found the Defendants argument here to lack merit:

> For consent to be valid, the sender must have consent from the actual recipient, not the "intended" recipient. What a defendant "believes" is irrelevant.   Mistaken belief that someone has permission to use the property of another is no defense. This Court noted in another TCPA case that "fax advertising is in the nature of a trespass, and common law recognizes that trespass occurs even if the trespasser is under mistaken believe that his use of the property was permitted." *I Dream Solns., Inc. v. Ellsworth, Inc.*, 2002 TCPA Rep. 1071 (Mo. Cir. Nov. 12, 2002). See also *Restatement (Second) of Torts § 164*, Intrusion Under Mistake; *Serota v. M. & M. Utilities, Inc.*, 285 N.Y.S.2d 121, 124 (1967) (defendant's "mistaken belief that his visit was authorized" was irrelevant to trespass clam).

As least three other cases have followed this same approach.   In *Dawson v. Am. Dream Home Loans,* No. 06 Civ. 513, 2006 WL 2987104, at *4 (Ohio Ct. Com. Pl. Oct. 4, 2006), the Court found that the recipient of calls or faxes that violated other provisions of the TCPA had standing to sue, even when the plaintiff was not the intended recipient of the call or fax. *See, Id.*

HYDE & SWIGART
San Diego, California

("Clearly, the statute provides for a cause of action for any person who receives an unsolicited fax and does not limit the cause of action to the intended recipient of an unsolicited fax.")  *See also, Charvat v. AT&T Corp.,* No. 98 Civ. 9334, 1999 TCPA Rep. 1005, at *7 (Ohio Ct. Com Pl. Nov. 30, 1999); *Goldberg v. Empire mortgage,* Case no. 04-cv-h-03-3435 (Franklin County Court of Common Pleas, Dec. 7, 2004).

Indeed, the legislative history of the TCPA, each and every FCC Opinion, as well as the plain language of the TCPA itself clearly shows that the subscribers to telephone lines have standing to assert claims under the TCPA. *See, e.g.,* 47 U.S.C. § 227(c)(1) (The TCPA instructs the Federal Communications Commission to promulgate regulations "concerning the need to protect residential *subscribers*' privacy rights to avoid receiving telephone solicitations to which they object") (emphasis added); 47 U.S.C. § 227 (a)(2)(A) (defining "established business relationship" as including a "relationship between a person or entity and business *subscriber* subject to the same terms applicable under such section to a relationship between a person or entity and a residential *subscriber*) (emphasis added); S. Rep. No. 102-178, at 1 (1991) ("The purposes of the bill are to protect the privacy interests of residential *subscriber*[s]") (emphasis added); *See also,* 1992 FCC Order, para. 31 (referring to telephone numbers captured by Caller ID without notice to the residential telephone *subscriber*) (emphasis added); 2008 FCC Order, para. 9 ("We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone *subscriber* to be contacted at that number regarding the debt.") (emphasis added).

That Defendant is now claiming that the dozens of calls to Clariza Gutierrez's cellular telephone were efforts to speak with Ramon Gutierrez only is simply irrelevant.  Clariza was the "called party" and the "recipient" of the call under the TCPA.   There is simply nothing in the TCPA suggesting that the "called party" is intended to mean "the party who the calling party claims to have subjectively intended to call."  A plain understanding of the term "called party" is "the party who *was* called."   In construing the provisions of a statute, Courts first look to the language of the statute to determine whether it has a plain meaning.  *McDonald v. Sun Oil Co.,* 548 F.3d 774, 780 (9th Cir. 2008).  "The preeminent canon of statutory interpretation requires us

to presume that [the] legislature says in a statute what it means and means in a statute what it says there.   Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous."   *Id.,* (quoting *BedRoc Ltd., LLC v. United States,* 541 U.S. 176, 183 (2004) (internal quotation marks omitted).   *See also*, *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162 (9th Cir. 2006)(…"where the statute's language is plain, the sole function of the courts is to enforce it according to its terms … for courts must presume that a legislature says in a statute what it means and means in a statute what it says there. *Id*. (citing   *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) and  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992)) (internal quotation marks omitted).")

If Congress intended that only individuals who a defendant subjectively intended to call - and not individuals who were in fact called, on a telephone line which is subscribed to them - would have standing under the TCPA, they would have said so.   But Congress didn't qualify the term "recipient" with words "subjectively intended."   Congress simply said the recipient of the call has a cause of action under the TCPA.   While it certainly stands to reason to hold that a non-subscribing recipient of a call would lack standing to bring a TCPA claim (while maintaining that the subscribing party had standing for the same call), to assert that a defendant can avoid liability when it places calls to the subscribing party, and the subscribing party receives the call, merely because the defendant claims to have subjectively intended to call someone else (a non-subscribing party) would accomplish little more than create an irrefutable defense to TCPA liability.   Surely this is not what Congress, nor the FCC intended.

1.   **The Cases Cited By Defendant Are Distinguishable and Provide Little Guidance On Plaintiffs' Claims**

Defendant directs this Court to several cases in support of its bold assertion that "as a matter of law," Clariza Gutierrez does not have standing to challenge the dozens of automated calls placed to her cellular telephone.   Importantly, each and every one of these cases deals with a situation where a defendant contacted a telephone number subscribed to by a particular individual, intending to speak with that subscriber, and a non-subscriber just happened to answer

the phone or retrieve the fax from the fax machine.    Defendant then obfuscates these courts' use of the term "intended recipient" as meaning Defendant's claimed subjective intention, as opposed to who they objectively called (the subscriber to the telephone number - who, according to these decisions, would have standing to assert TCPA claims - which in this case would be Clariza Gutierrez).   These decisions all found that a viable TCPA claim existed. The claim just belonged to the subscriber, and not the person who by happenstance retrieved the message.

But this is not what Defendant is arguing.   Defendant's argument is that they can call any subscriber they want, claim to have intended to speak with a non-subscriber, and eliminate the existence of any TCPA claim altogether (for both the subscriber and the non-subscriber).[9]   This is the exact opposite of what these courts held; i.e., that a non-subscriber does not have a viable TCPA claim when a defendant contacts a subscriber, intending to speak with the subscriber. Indeed, the theory Defendant advocates - absolving TCPA liability to a subscriber by claiming the defendant intended to speak with a non-subscriber - was expressly rejected by the FCC.   *See, Consumer.Net v. AT&T Corp.,* 15 F.C.C.R. 281 (1999).

In *Leyse v. Bank of America, N.A.,* 2010 WL 2382400 (S.D.N.Y. June 14, 2010), plaintiff Leyse brought a putative class action under the TCPA, alleging that telephone calls placed by Bank of America to Leyse's residence violated the TCPA.   *Id.* at *4.   Leyse, however, was not associated with, the subscriber of, or otherwise had any ownership interest in the phone number called - unlike the situation here.   Rather, Leyse's roommate, Dutriaux, was the subscriber to the telephone line that was called, and Bank of America placed the call to this telephone number intending to speak with Dutriaux.   Leyse was merely the individual who answered the call placed to a number which was subscribed to Dutriaux.   In other words, the defendant in that case, like

---

[9] If Defendant's argument were accepted, than Defendant could contact any person at any cellular telephone number and absolve themselves of TCPA liability by simply claiming to be looking for someone else.   Consider the following hypothetical:   David C. Leimbach, counsel for the plaintiffs, filled out an application for a Barclays credit card, and listed Your Honor's cellular telephone number as a contact and Barclays subsequently placed dozens of automated calls and text messages to Your Honor's cellular telephone in an effort to collect on Mr. Leimbach's debt. Defendant's position is that you would lack standing to pursue a TCPA claim because they claimed to have "intended" to contact Mr. Leimbach.   The absurdity of such an argument should be obvious.

HYDE & SWIGART
San Diego, California

each and every other case cited by Defendant, placed a call to a telephone number which actually belonged to the person the defendant intended to call, but someone else happened to answer the call.

While *Leyse* rejected the notion that the party with standing had to be the subscriber to the telephone line, the facts of that case make its ruling inapplicable to this case.[10]   For example, *Leyse* dealt with prerecorded calls to landlines, and it was accepted that Dutriaux's residence was in fact the number that was called. The *Leyse* Court stated that "[i]f Bank of America had the prior express consent of Dutriaux to place the call *to her residence*, it would be free to call Dutriaux regardless of whether Dutriaux was the residential telephone subscriber." *Id.* at *5 (emphasis added).   The facts of *Leyse* are simply not applicable to this case because whether Dutriaux was the subscriber or not, the number called was still Dutriaux's number.  This is simply not the case here.  Despite the fact that Ramon provided Clariza's cellular telephone number on his credit card application, it still is not *his* number.  The cellular telephone number contacted by Defendant is a phone number that is subscribed to, and exclusively used by, Clariza.

Similarly, in *Kopff v. World Research Group, LLC,* 568 F. Supp 2d 39 (D.D.C. 2008), plaintiffs Judy Kopff and Gary Kopff (husband and wife) file suit alleging they received various unsolicited facsimile transmissions from the defendants in violation of the TCPA.  *Id.* at 41-42. The faxes were addressed to Mr. Kopff, as President of Heritage Management Ltd and were sent to the fax number listed on Heritage's letterhead.  *Id.*  Ms. Kopff acted as executive assistant to the President of Heritage, and accepted the faxes from the fax machine located in the Kopffs' home office.  *Id.*  Put simply, *Kopff* dealt with a situation where a defendant sent faxes to a persons telephone line (the subscriber), and it just so happened that another person (the non-

---

[10]  [10]  To the extent that the *Leyse* decision is understood as meaning subscribers to cellular telephone numbers, who actually receive calls to their cellular telephones without their prior express consent, would lack standing to bring claims under the TCPA merely because the calling party later claims claimed they "intended" to speak with a non-subscribing party, *Leyse* would have to be viewed as clearly erroneous and should not be followed.   Such a decision stands in direct contradiction to the plain language of the TCPA, the intended meaning of the TCPA, every cannon of statutory construction, in addition to directly contradicting the FCC's opinion on the same issue. *See Consumer.Net v. AT&T Corp.,* 15 F.C.C.R. 281 (1999).

HYDE & SWIGART
San Diego, California

subscriber) happened to retrieve the message.

In *Cellco Partnership v. Dealers Warranty LLC,* 2010 WL 3946713 (D. N.J. Oct. 5, 2010) the Court was considering whether the TCPA provided a private right of action for telecommunications vendors to bring claims on behalf of their subscribers. *Id.* at *7. In *Cellco*'s discussion of this standing issue, the Court stated that "the only logical reading of § 227(b)(1)(A) is one that would require the party asserting the claim be the party to whom the call is directed." *Id.* at *9. The *Cellco* Court was clearly referring to the subscriber to the number called (or in other words, the party who actually received the call and had an ownership and privacy interest in the telephone number called), and not any person a defendant could conceivably claim they intended to call. Similar to every other decision cited by Defendant, this Court did not reject the existence of a TCPA claim altogether, but simply asserted that the proper person, i.e., the "called party," must be the one to assert it.

The circumstances of these cases are not present here. Clariza Gutierrez was the subscriber to the telephone number called, not some third party. Clariza Gutierrez owned the telephone number called, and it was Clariza Gutierrez's privacy and ownership interest that was invaded by these calls. These cases would only be analogous to the present one if Defendant only placed automated calls to Ramon's cellular telephone, and Clariza happened to answer the phone. But here, Defendant continuously called Clariza Gutierrez's cellular telephone; a cellular telephone number in Clariza Gutierrez's name, subscribed to by Clariza, and exclusively used by Clariza.

Consequently, the cases cited by Defendant provide little guidance to the issues before this Court. None of these cases deal with cellular telephones, and with the exception of the *Leyse* decision - which was either poorly reasoned or poorly worded - none of these cases could conceivably stand for the proposition that a subscriber to a cellular telephone line who received calls in violation of the TCPA lacks standing to bring TCPA claims simply because the defendant stated their intention to speak with a non-subscriber. On the Contrary, the FCC has explicitly stated that a telephone subscriber has standing to bring a TCPA claim despite the fact the violating party claimed to be looking for a non-subscriber.

HYDE & SWIGART
San Diego, California

HYDE & SWIGART
San Diego, California

### 2.    Defendant Intended To Call Clariza Gutierrez

It cannot be credibly asserted after the first call that Clariza Gutierrez was merely an "unintended and incidental recipient of the call." *See,* Clariza Dec. ¶ 2.   Clariza informed Defendant on no less than eight occasions that the number Defendant was calling was hers - not Ramon's.  Clariza Dec. ¶4; Leimbach Dec., Ex. A-H.  Even Defendant's records memorialize that the number being dialed was Clariza Gutierrez, and not Ramon's.  (Filed under seal as attachment to Declaraiton of Michael Liu).   But now Defendant claims it never intended to call Clariza Gutierrez, despite the fact they were repeatedly put on notice they were contacting Clariza, and attempted to collect on the same alleged debt from Clariza as they would from Ramon.

Such a claim simply can not be believed based on the the objective circumstances to the contrary.  Whether contacting Ramon or Clariza, Defendant continued its purpose for placing the call in the first place - to collect on an alleged credit card debt. *See,* Leimbach Dec., Ex. A-H. Indeed, Defendant has dedicated a significant portion of its moving papers to establish that Clariza generally managed the household finances (Def. Mtn. 4: 17-21), Clariza was an authorized user on the account (Def. Mtn. 2: 19-23), Ramon had authorized Clariza to speak with Defendant on the Account (Def. Mtn. 4: 17-21), and that Defendant otherwise had every right to contact Clariza to collect on the debt. (Def. Mtn. 13: 22-28; 14: 1-4) ("In fact, Ramon Gutierrez expressly authorized Barclays to communicate with Clariza Gutierrez on all Account matters. [ ] Clariza Gutierrez agreed that she was the primary contact for the account. [ ] Having consented to be contacted about the Account, Clariza Gutierrez may not now complain that such contacts occurred").  So while Defendant acknowledges the many conversations had between Clariza and Defendant, and even argues that it every right to call Clariza based on the above, Defendant maintains they never "intended" to call Clariza.

Notably, in a call taking place on April 29, 2010, Plaintiff and Defendant had the following exchange:

> Clariza: I am the spouse, but you're calling my cell phone.  I gave him my house number. I don't want no calls on my cell phone.  I have a house number you can call, but not my cell phone.
> ...
> Defendant: Let me ask, have you already made the payment on this account?

HYDE & SWIGART
San Diego, California

> Clariza:  We are not gonna make a payment on this account.
>
> Defendant: Then expect another phone call ma'am, have a great day.

Leimbach Dec., Ex. B.  If nothing else, this conversation demonstrates that Defendant "intended" to continue placing calls to Clariza Gutierrez cellular telephone, with the explicit purpose of contacting (or more accurately, harassing) Clariza Gutierrez.

Because of the overwhelming evidence to the contrary, this Court is not required to, nor should it accept Defendant's bald assertion that it never intended to contact Clariza.  Certainly, based on the presence of circumstances that so overwhelmingly contradict Defendant's claimed intentions, there is a genuine issue of material fact that should be reserved for a jury.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986).  Accordingly, even though Clariza was the "recipient" of the calls and the "called party," and even if Defendant's subjective intentions were relevant (they are not), it is clear that after the first call Defendant intended to contact Clariza specifically.  At a very minimum, the facts before the Court would certainly create a genuine issue of material fact, thus rendering summary adjudication on this issue inappropriate.

**D.    CLARIZA GUTIERREZ NEVER PROVIDED PRIOR EXPRESS CONSENT TO RECEIVE CALLS TO HER CELLULAR TELEPHONE FROM DEFENDANT'S AUTOMATIC TELEPHONE DIALING SYSTEM**

Clariza Gutierrez did not provide prior express consent under the TCPA to receive the calls at issue. Clariza Dec., ¶ 3.  For the purposes of this Motion, there are two ways this Court can dispense with this issue.  First, there is nothing in the TCPA, related case authority, or any cannons of statutory construction permitting a finding that a third party can provide prior express consent on behalf of another third party.  Common sense dictates that one third party cannot provide prior express consent on behalf of another third party.[11]   Thus, a factual inquiry is not required to determine if Clariza gave prior express consent, as Defendant only argues that Clariza

---

[11] As a practical matter, even if a person *can* provide general consent to a third party to use their cellular telephone number (as Defendant claims here), this certainly could not be understood as "prior express consent" from the called party to the calling party.  At best, an attenuated argument could be made that this would constitute *implied consent*.

HYDE & SWIGART
San Diego, California

gave such consent by virtue of allowing her husband, Ramon, to use her cellular telephone number as a contact on the Account Application.   In other words, Defendant does not even argue that Clariza provided her cellular telephone number to Defendant - either orally or in writing.

Assuming, however, that under the TCPA a third party can provide prior express consent on behalf of another third party to receive automated calls, there is clearly a factual dispute. Defendant's Motion relies entirely on the deposition of Ramon Gutierrez, where Ramon stated his erroneous belief that he had Clariza Gutierrez's specific permission to use her cellular telephone number on the Account Application.  Def.'s Mtn. 5: 18-20.  Clariza, however, offers contradictory testimony, and clearly stated she was never specifically requested to use her cellular telephone number on the Account Application, nor did she ever give Ramon permission to use her cellular telephone on the Account Application.   Clariza Dec., ¶¶ 5, 6; Leimbach Dec., Ex. J, 54: 3-10; 66:19-21.  This is a quintessential disputed issue of fact - a fact that is highly material if the Court determines that a third party can provide prior express consent under the TCPA on behalf of another third party.  Either way, summary judgment is not appropriate.

1.      **Because Clariza Never Gave Her Cellular Telephone Number to Defendant, Either Orally Or In Writing, Clariza Could Not Have Given Prior Express Consent**

The FCC has addressed this issue in several opinions, and in each case, one constant remains: prior express consent only exists if a consumer gave their telephone number to a creditor.  There is simply no justification in logic or law to assert that a third party can give prior express consent on behalf of an other third party.

In the 1992 FCC Order, the Commission "emphasize[d] that prior express consent is deemed to be granted ***only if the wireless number was provided by the consumer to the creditor*** . . ." (emphasis added). 1992 FCC Order.    In the 2008 FCC Order, the Commission, while expanding the concept of prior express consent to telephone numbers provided by subscribers in a credit card application, maintained that the number had to be provided directly from the called party to the creditor.  *See,* 2008 FCC Order, para. 9 ("Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in

connection with an existing debt are made with the 'prior express consent' of the called party, we clarify that such calls are permissible.  We conclude that the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt. . . . We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor . . .")

While "express consent" is not defined in the TCPA, the above-referenced FCC Opinions, as well as authority from the Ninth Circuit and other legislative bodies make clear one third party cannot provide prior express consent on behalf of another party, and that the only way to obtain prior express consent to to receive it directly from the consumer.   For example, the Federal Trade Commission has already defined the phrase "express consent" as follows: 'Express' consent means that consumers must affirmatively and unambiguously articulate their consent. Silence is not tantamount to consent; nor does an ambiguous response from a consumer equal consent. Federal Trade Commission,   16 CFR Part 310, 67 FR at 4620.   Express consent has also been defined as requiring an explicit agreement between the parties, not the implied consent substituted for the express consent by the FCC in regards to debt collection.   *Cadsoft Corp. v. Riverdeep, LLC*, 2007 U.S. Dist. LEXIS 39559  at *8 (N.D. Cal.  2007).

The Ninth Circuit Court has recently rejected much more plausible arguments for prior express consent than those offered by Defendant.  In *Satterfield v. Simon & Schuster, Inc.*, 569 F. 3d 946 (9th Cir. 2009), the plaintiff joined a company called Nextones to receive a free ringtone for her cellular telephone. Id. at 949.  In order for Satterfield to get the free ringtone, she was required to fill out a form which provided her cellular telephone number, and allowed her to check a box stating "Yes! I would like to receive promotions from Nextones affiliates and brands." *Id.* Subsequently, Satterfield received a text message on her cellular telephone from Simon & Schuster advertising the publication of a recent novel, stating "The next call you take may be your last ... Join the Stephen King VIP Mobile Club at www. cellthebook. com. RplySTOP2OptOut. **PwdbyNexton**." Id.  (emphasis added.)  Simon & Schuster outsourced the promotional campaign to "ipsh!", who obtained a list of 100,000 individuals' cell phone numbers

from Mobile Information Access Company (MIA).   MIA was Nextones' exclusive agent for licensing the numbers of Nextones subscribers.   *Id*.

Satterfield filed suit, alleging a violation of the TCPA for Simon & Schuster's transmission of this unsolicited text message to her and other class members' cell phones, by an Automatic Telephone Dialing System.   Simon & Schuster moved for summary judgment, arguing that, among other things, the number Satterfield provided to Nextone was sufficient as prior express consent to receive the test message.   In rejecting this argument, the Ninth Circuit held that:

> While the TCPA exempts those calls "made with the prior express consent of the called party," 47 U.S.C. § 227(b)(1)(A), no express consent was given in this case. Express consent is "[c]onsent that is clearly and unmistakably stated." Black's Law Dictionary 323 (8th ed.2004). Satterfield solely consented to receiving promotional material from Nextones or their affiliates and brands.

*Id*. at 955.   The Ninth Circuit continued:

> The district court also erred in granting summary judgment based on Satterfield's consent to receive promotional materials by Nextones' brands. The district court found there was "no dispute of fact that the promotional text message at issue was identified with a Nextones brand." The district court's conclusion is based solely on the fact that the message contained the phrase "PwdbyNexton."   We do not agree. Under this logic, any company sending a text message could simply include "PwdbyNexton" and it would be considered a "brand" of Nextones. Thus, Satterfield's consent to receive promotional material by Nextones and its affiliates and brands cannot be read as consenting to the receipt of Simon & Schuster's promotional material. Accordingly, the district court erred in granting summary judgment.

*Id*.

In *Satterfield,* the Ninth Circuit addressed the situation where an individual gave out their cellular telephone number, and even further, gave out that number in order to receive promotional text messages.   Resolving this issue, the Ninth Circuit held that the express consent must be given specifically to the party contacting consumers with automated technology.   Under this standard, as well as basic principles of ordinary language usage and other federal agencies understanding of "prior express consent", there is simply no logical argument to be made that one party can provide prior express consent on behalf of another party.   Clariza never gave Defendant her number.   Clariza never gave her cellular telephone number to any affiliate of Defendant.   Simply

HYDE & SWIGART
San Diego, California

put, as a matter of law there can be no prior express consent when it is not even claimed that the called party ever provided their cellular telephone number to the calling party.

**E.   BECAUSE PRIOR EXPRESS CONSENT ONLY NEED BE REVOKED ORALLY, EVEN IF CLARIZA GUTIERREZ CONSENTED TO THE CALLS, SHE EFFECTIVELY REVOKED SAID CONSENT**

On multiple occasions, Clariza Gutierrez spoke with Defendant and unequivocally stated that Defendant did not have consent to contact her cellular telephone number, and requested Defendant stop making automated and prerecorded calls to her cellular telephone.[12]  Clariza Dec. ¶¶ 3, 4; Leimbach Dec., Ex. A-H.  Even Defendant's Account notes reflect that Clariza informed Defendant to stop calling her cellular telephone.  Leimbach Dec., Exhibit I.   Assuming for the moment that one third party can provide express consent on behalf of another third party, Clariza Gutierrez certainly revoked that consent.[13]

Defendant argues that to effectively revoke prior express consent, such revocation must be in writing.   There is, however, absolutely nothing in the TCPA that would support such a position.[14]   In fact, based on the most basic tenants of statutory construction, as well as the plain language of  the TCPA, such consent can absolutely be revoked orally.  In the 1992 FCC order,

[12] Referring the Court back to Plaintiffs' query that if Clariza lacked standing to challenge the call, then Ramon would have to have standing to challenge those same calls, *see infra*, fn. 8, Plaintiff submits that because Ramon authorized Clariza to speak on the Account, *See,* Def.'s Mtn. 4: 17-21, Clariza had the authority to revoke any purported consent given by Ramon to contact Clariza's cellular telephone, and properly revoked any such consent.

[13] The legislative history of the TCPA confirms that entities such as Defendant have an ongoing duty to ensure they have consent to contact the numbers they call.  *See,* U.S. House Rep. No. 102-317, at 13 (102nd Cong., 1st Sess. 1991) (The House Report on the TCPA discusses the phrase "prior express invitation or permission and makes clear that advertisers have a duty to "establish specific procedures for obtaining prior permission and maintaining appropriate documentation with respect to such permission."); *See also,* U.S. Senate Rep. No. 102-178, at 8 102nd Cong., 1st Sess. 1991) (This responsibility "is the minimum necessary to protect unwilling recipients from receiving fax messages that are detrimental to the owner's uses of his or her fax machine."  As a matter of law, Defendant's had an ongoing duty to ensure the numbers they were dialing were being done so with the prior express consent of the recipients.

[14] Indeed, as there is no dispute that a consumer can provide prior express consent to receive automated calls orally, *See generally,* 1992 FCC Order; 2008 FCC Order, it stands to reason that the same consent given orally could certainly be revoked orally.

HYDE & SWIGART
San Diego, California

HYDE & SWIGART
San Diego, California

the Commission stated that persons who provide their creditors their cellular telephone numbers have given prior express consent "***absent instructions to the contrary.***" (emphasis added).   The Commission could have easily qualified this phrase with the word "written, e.g., "absent [written] instructions to the contrary," but chose not to.[15]    A district court must accept the FCC's interpretation of the TCPA as expressed in their regulations and orders.   *CE Design, Ltd. v. Prism Bus. Media, Inc.,* 606 F.3d 443, 449-50 (7th Cir. 2010).   Because this Court has no jurisdiction to determine the validity of FCC orders, the Court must decline to address defendant's challenge to the FCC's interpretation of the TCPA as it relates to how a consumer revokes prior express consent.

Defendant's argue that it is "beyond dispute, as a matter of law, that once a debtor grants a creditor 'prior express consent' to be contacted at a particular cellular number, such consent cannot be revoked orally."   (Def. Mtn. p. 14, ln. 7-9.)   Defendant bases this "as a matter of law" principle on two non-ninth Circuit cases which, quite frankly, are poorly reasoned decisions which conflate the analysis required under the FDCPA and TCPA.   For example, in *Starkey v. Firestone Advantage, LLC,* 2010 WL 2541756 (W.D.N.Y. Mar. 11, 2010), the consumer debtor filed suit alleging violations of the FDCPA and the TCPA based on approximately 6-14 calls placed to her cellular phone by the creditor cable company.   The consumer verbally requested that the creditor cease all collection efforts against her, not that they stop placing automated calls to her cellular telephone.   Contrary to Defendant's misrepresentation, the *Starkey* Court did not find that "revocation of consent under the TCPA must be made in writing," but rather, found that "[t]o cease ***debt collection*** calls, written notice is required."   (emphasis added.)[16]   But that does not apply here as this is not a case under the Fair Debt Collection Practices Act (FDCPA).

_____

[15] Indeed, in other bodies of federal law, Congress has demonstrated that it includes the phrase "written" when a writing is required.  *See,* 15 U.S.C. § 1692c(c).

[16] And indeed, *that* is true.   15 U.S.C. § 1692c(c) provides that if a consumer notifies a debt collector <u>in writing</u> that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt.

Notwithstanding the fact that *Starkey* does not define what is required to revoke "prior express consent" under the TCPA, to the extent such an inference can be drawn from this opinion, *Starkey* was a poorly reasoned decision which conflates the wording of the FDCPA and the TCPA. First, *Starkey* erroneously states that there is "nothing in . . . the TCPA . . . to support plaintiff's claim that a verbal request is sufficient to cease legitimate debt collection efforts." This is an improper starting point for the Court's analysis, as the TCPA is not meant to remedy "debt collection efforts,"[17] but rather, deals with automated calls to cellular telephones.[18] To search for evidence of how a consumer would seek to "cease legitimate debt collection efforts" in the TCPA would indeed be a futile endeavor. What this Court should look for in the TCPA is evidence relating to how a consumer may require a creditor cease collection calls to a specific cellular phone, rather than collection efforts altogether. And the FCC has already spoken on this issue: persons who provide their creditors their cellular telephone numbers have given prior express consent "***absent instructions to the contrary.***" The Commission never stated that these contrary instructions must be in writing, and as a matter of law, such an inference cannot be drawn. *CE Design, Ltd. v. Prism Bus. Media, Inc.,* 606 F.3d 443, 449-50 (7th Cir. 2010).

*/./.* /

--------

[17] The FDCPA does that. See 15 U.S.C. §§ 1692 et seq.

[18] Furthermore, to the extent *Starkey* has any bearing on this issue, it is clear that the Court's conclusions were largely influenced by the presence of the plaintiff's FDCPA claims, and the FDCPA's application to that particular dispute. Again, this is not the case here, and there is no FDCPA complications to this case because Defendant is not regulated by the FDCPA, as the FDCPA does not apply to original creditors. 15 U.S.C. 1692(a)(6). In the end, *Starkey* was a significantly flawed decision that conflated the concepts of revoking prior express consent to contact a specific cellular telephone number under the TCPA with requesting a cessation of collection efforts altogether under the FDCPA, without ever actually deciding the issue of whether prior express consent under the TCPA can be revoked orally or in writing, and erroneously assumed there was nothing in the TCPA supported a determination that express consent could be revoked orally, when in fact there is ample evidence to the contrary.

HYDE & SWIGART
San Diego, California

H YDE & S WIGART
San Diego, California

### V.   CONCLUSION

To accept Defendant's unsupported argument that the only relevant inquiry in determining TCPA liability is who Defendant claims to have subjectively intended to call would accomplish little more than create an irrefutable defense to TCPA liability which would undermine purpose of the TCPA, the plain language of the TCPA, every tenant of statuary construction, as well as the clearly expressed position of the FCC.   As the subscriber to the cellular telephone, and the individual who answered Defendant's dozens of automated calls, Clariza clearly has standing to assert claims under the TCPA.  And even if that weren't the case, there is certainly a genuine dispute of material fact as to whether Defendant intended to contact Clariza.

Defendant has conceded TCPA liability with respect to Ramon Gutierrez by admitting to sending text messages to Ramon's cellular telephone after Ramon sent Defendant a written request to stop sending text messages to his cellular telephone.  Additionally, there is absolutely nothing in logic or law suggesting that a third party can provide prior express consent on behalf of another third party under the TCPA, nor is there a legitimate argument that prior express consent under the TCPA would need to be revoked in writing.   Lastly, Defendant's argument that Plaintiffs are required to demonstrate they were charged for the calls at issue is nothing more than an error in statutory construction.

Based on the forging, Plaintiffs respectfully request this Court deny Defendant's Motion in its entirety.

Date: January 21, 2011                          **H YDE & S WIGART**

                                                By:  /s/  David C. Leimbach
                                                    David C. Leimbach
                                                    Attorneys for Plaintiffs