```
 1  Abraham J. Colman (SBN 146933)
    acolman@reedsmith.com
 2  Felicia Y. Yu (SBN 193316)
    fyu@reedsmith.com
 3  Jordan Yu (SBN 227341)
    jsyu@reedsmith.com
 4  REED SMITH LLP
    355 S. Grand Avenue, Suite 2900
 5  Los Angeles, CA 90071
    Telephone:    213.457.8000
 6  Facsimile:    213.457.8080

 7  Attorneys for Defendant
    Barclays Bank Delaware, erroneously sued
 8  herein as Barclays Group, d.b.a., Barclaycard,
    d.b.a., Barclays Bank, d.b.a., Barclays Bank
 9  Delaware, d.b.a., Barclays Bank of Delaware,
    N.A., Barclaycard Funding, PLC a Delaware
10  Corporation.
```

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ramon Gutierrez and Clariza Gutierrez, on behalf of themselves and all others similarly situated<br><br>Plaintiff<br><br>vs.<br><br>Barclays Group, d.b.a. Barclaycard, d.b.a. Barclays Bank, d.b.a., Barclays Bank Delaware, d.b.a., Barclays Bank of Delaware, N.A., Barclaycard Funding, PLC, a Delaware Corporation,<br><br>Defendants. | Case No.: 10-CV-1012 DMS BGS<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Honorable Dana M. Sabraw |

US_ACTIVE-107359369.2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In this putative nationwide class action, Plaintiffs Ramon Gutierrez and Clariza Gutierrez (collectively "Plaintiffs") assert two causes of action against Defendant Barclays Bank Delaware ("Barclays"): (1) negligent violation of Section 227(b)(1)(A) of the Telephone Consumer Protection Act ("TCPA"), codified at 47 U.S.C. § 227 *et seq.*, and (2) willful violation of Section 227(b)(1)(A) of the TCPA. Specifically, Plaintiffs allege that Barclays violated Section 227(b)(1)(A) of the TCPA by calling and texting Plaintiffs' respective cellular telephones without obtaining "prior express consent" to do so for the purpose of collecting a past due credit card debt owed to Barclays.

For over one year since the commencement of this action, the Parties have engaged in extensive discovery and motion practice. The Parties propounded and responded to comprehensive written discovery, exchanged voluminous documents, sought discovery from third parties, and attended four separate discovery hearings. In addition, both Plaintiffs as well as two separate corporate representatives of Barclays were deposed. The Parties also fully briefed a motion for summary judgment. Through this discovery and motion practice, the Parties believe that they are fully apprised of the relative strengths and weaknesses of each other's claims and defenses and the potential risk to each party of pursuing further litigation in this matter.

On May 4, 2011, the Parties attended an all day mediation before the Honorable Leo Papas (Ret.) and reached a settlement in this action. Taking into account the burdens, uncertainty and risks inherent in this litigation, the Parties have concluded that further prosecution and defense of this action could be protracted, unduly burdensome, and expensive, and that it is desirable, fair, and beneficial to the class that the action now be fully and finally compromised, settled and terminated in the manner and upon the terms and conditions set forth in the attached Settlement Agreement.

Pursuant to the terms of the Settlement Agreement, the Parties now jointly request the Court to 1) grant Plaintiffs leave to file a first amended complaint, 2) certify a class for settlement purposes only, 3) preliminarily approve settlement of the action, 4) appoint Robert L. Hyde and Joshua B. Swigart of Hyde & Swigart as Class Counsel, 5) appoint Plaintiffs as the Class Representatives, 6) approve the proposed plan of providing notice to the class, and 7) approve the proposed preliminary

schedule for providing notice to the class and for class members to submit requests for exclusion or objections to the proposed settlement.

In the event that the settlement is not approved, the Parties agree that any agreement or order certifying a settlement class shall be null and void and the Parties shall return to their respective positions at the time this Motion was submitted to the Court for approval.

## II. STATEMENT OF THE CASE

### A. Plaintiffs' Complaint Alleges That Barclays Violated the TCPA

Plaintiffs' Complaint alleges that Barclays violated Section 227(b)(1)(A) of the TCPA, both negligently and willfully, by calling and texting Plaintiffs' respective cellular telephones without obtaining prior express consent for the purpose of collecting a past due credit card debt. Section 227(b)(1)(A) of the TCPA provides as follows:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States-
> (A) To make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or pre-recorded voice
> . . .
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call ...

Based on this allegation, Plaintiffs' Complaint seeks to certify a nationwide class defined as follows:

> All persons within the United States who received any telephone call from Defendant to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial prerecorded voice, within the four years prior to the filing of this Complaint.[1]

Plaintiffs contend that the class as defined in the Complaint satisfies the requirements of

---

[1] Plaintiffs also seek to certify four sub-classes.

Rule 23 because Barclays called or texted each class member without obtaining their prior express consent to do so.

### B. Barclays Contends That It Had Prior Express Consent To Call or Text Plaintiffs' Cellular Telephones And That Plaintiffs Cannot Certify A Class

Barclays denied from the outset, and continues to deny, that it called or sent any text message to Plaintiffs in violation of the TCPA. Barclays maintains that it had "prior express consent" to call or text Plaintiffs' cellular telephones because Ramon Gutierrez listed both his cellular telephone number and his wife's cellular telephone number in his Barclays credit card application. *Rules & Regulations Implementing The Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, 23 F.C.C.R. 559, 562 ("We conclude that the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at the number regarding the debt."); *Starkey v. Firstsource Advantage, LLC,* 2010 WL 2541756, *6 (W.D.N.Y. Mar. 11, 2010); *Cunningham v. Credit Management, L.P.*, 2010 WL 3791104, *4 (N.D. Tex. 2010).[2]

Barclays further contends that the proposed class as defined in the Complaint cannot satisfy the requirements of Rule 23. As an initial matter, Barclays contends that the class is not ascertainable because Barclays' outbound collection call log is not segregated into landline numbers and cellular numbers. Further, due to the ability to port cellular numbers to landlines and vice versa, Barclays contends that each number on Barclays' outbound call log must be analyzed to determine whether it was ever ported, and if so, whether the number was a cellular number on the date Barclays called the number. Barclays contends that there is no reliable method for undertaking this type of analysis for the numerous calls made by Barclays over a four year period. *See Kurtz & Lowry v. Interstate Ins. Serv. Agency, Inc.*, 2010 WL 4514255, *3 (Ohio App. 1 Dist. 2010) ("the record supports the trial court's conclusion that the only way to determine the class membership is to

---

[2] On January 7, 2011, Barclays filed a Motion for Summary Judgment on the issue of "prior express consent," among other issues. [Document 22] The Motion for Summary Judgment was fully briefed by the Parties. On February 9, 2011, the Court denied Barclays' Motion for Summary Judgment, ruling that although Barclays obtained prior express consent to call Plaintiffs' respective cellular telephones, Plaintiffs subsequently revoked their consent. [Document 35].

analyze the master list on an entry-by-entry basis and then to contact each entry on the list to determine who in fact owns the number, whether that person owned the number on the dates in question, and whether that person actually received a transmission on the dates in question. Each entry on the master list of 1,300 facsimile numbers will require a unique and individual assessment of its class eligibility."); *Paradise v. Al Copeland Investments, Inc.*, 22 So. 3d 1018 (La. App. 1 Cir. 2009); *Apartment Investment and Mgmt. Co. v. Suggs & Associates, P.C.*, 129 S.W. 3d 250, 255; *Pinnacle Realty Mgmt. Co., Kondos*, 130 S.W. 3d 292 (Tx. 2004).

Second, Barclays contends that Plaintiffs cannot satisfy the requirements of Rule 23(b)(3). As revealed during Barclays' deposition, Barclays contends that it does not contact its cardholders at any telephone number without obtaining prior consent to do so. Rather, the vast majority of the telephone numbers in Barclays' dialer system are those provided by the cardholder in the account application as either a "home phone" or "work phone." Further, a cardholder may update (either add or delete) his or her contact telephone number at anytime by, among other means, writing or calling Barclays or through Barclays' self-service online account management system. Accordingly, even assuming that Barclays' outbound call log for the past four years can be segregated into cellular numbers and landline numbers, and the portability history of each telephone number can be accounted for, Barclays contends that the question of which of these telephone numbers were dialed with the consent of the cardholder can only be answered by examining each cardholder's account application, account notes and correspondence history with Barclays.

Further, Barclays contends that the same individualized analysis must be undertaken to determine, for each outbound call for the past four years, whether the previously granted consent for a given telephone number was ever revoked. *See e.g., Gene & Gene, LLC v. Biopay, LLC*, 624 F.3d 698, 702 (5th Cir. 2010) ("When this court reversed, we held that 'the determinative question of whether consent can be established via class-wide proof must, given the particular facts of this case, be answered in the negative. [Plaintiff] has failed to advance a viable theory of generalize proof' concerning lack of consent."); *G.M. Sign, Inc. v. Brink's MFG. Co.*, 2011 WL 248511, *8 (N.D. Ill. 2011); *Boehm, Kurtz & Lowry v. Interstate Ins. Serv. Agency, Inc.*, 2010 WL 4514255 (Ohio App. 1 Dist. 2010); *Applestein v. Fairfield Resorts, Inc.*, 2009 WL 5604429 (Md. App. 2009).

### C. Plaintiffs Move To Amend Their Complaint

Although Plaintiffs contend that the allegations of the Complaint have merit and the class as defined in the Complaint can be certified, the Parties have agreed that Plaintiffs will seek leave to file a First Amended Complaint ("FAC") as part of the settlement. The proposed FAC is attached hereto as Exhibit A.[3] The proposed FAC, like the Complaint, asserts two causes of action: (1) negligent violation of Section 227(b)(1)(A) of the TCPA and (2) willful violation of Section 227(b)(1)(A) of the TCPA. The FAC alleges that on or about April 28, 2010, three text messages were exchanged between Barclays and Plaintiffs in the following sequence:

(1) From Barclays to Plaintiffs:

> FREE alert: Courtesy Reminder for your Juniper Bank MasterCard. Please Press SEND 866-740-4298 to speak to us.
> Reply STOP to end messages.

(2) From Plaintiffs to Barclays:

> Stop.

(3) From Barclays to Plaintiffs:

> You will no longer receive text alerts from Barclaycard to this number. If you have questions, call 866-408-4070.

("Confirming Text Message")

The FAC alleges that the Confirming Text Message violates the TCPA because it is a "call" to a cellular telephone after consent has been expressly revoked by Plaintiffs.

Based on this allegation, the Proposed FAC seeks to certify the following class:

> All persons within the United States who are present or former cardholders of Barclays, who have not filed for bankruptcy and who are not deceased, who received a Confirming Text Message on their cellular telephone(s) sent by

---

[3] The Proposed FAC is also attached as Exhibit A to the Settlement Agreement.

Barclays, its agents or contractors, on or after May 12, 2006 through the present, which were not sent for emergency purposes or with the recipient's prior express consent.

Exh. A, ¶ 22(a).

Barclays contends that the Confirming Text Message does not violate the TCPA, and further contends that the FAC is without merit. First, Barclays contends that the Confirming Text Message was not sent using an "automatic telephone dialing system" as prohibited by the TCPA. Rather, Barclays contends that the Confirming Text Message was sent using a dialing system that does not, and does not have the capacity or capability to, randomly or sequentially generate or dial telephone numbers. 47 U.S.C. § 227 (a)(1)(A).

Second, as the legislative history of the TCPA indicates, the TCPA was not intended to prohibit "normal, expected or desired" communications between a creditor and a debtor:

> The Committee does not intend for this restriction to be a barrier to the normal, expected or desired communications between businesses and their customers. For example, a retailer, insurer, banker or other creditor would not be prohibited from using an automatic dialer recorded message player to advise a customer (at the telephone number provided by the customer) that an ordered product had arrived, a service was scheduled or performed, or a bill had not been paid. *Telephone Advertising Consumer Rights Act*, H.R. Rep. No. 102-317, at 17 (1991).

Accordingly, Barclays contends that a text message simply advising a cardholder that Barclays has received, and will honor, the cardholder's "stop" request does not violate the TCPA.

Third, the TCPA itself – in the context of both junk faxes and solicitation calls to residential lines– affords a defendant 30 days to honor a cease and desist request. 47 C.F.R. § 64.1200 (a)(vi). Accordingly, although no specific regulation speaks to the timeframe for honoring a cease and desist request in the context of Section 227(b)(1)(A), Barclays contends that a 30 day safe harbor provision would also apply to Section 227(b)(1)(A) and that a confirming text message sent immediately after the "stop" request was received does not violate the TCPA.

Fourth, in interpreting the TCPA for alleged debt collection activity, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. Section 1692 *et seq.*, provides interpretive guidance. *See*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Starkey*, 2010 WL 2541756 at *6; *Cunningham, L.P.*, 2010 WL 3791104 at *5. Under the FDCPA, "If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, *except--(1) to advise the consumer that the debt collector's further efforts are being terminated; (2) to notify the consumer that the debt collector's further efforts are being terminated*[.]" 15 U.S.C. § 1692c(c)(1)-(2) (emphasis added).

Accordingly, Barclays contends that the Confirming Text Message does not violate the TCPA.

### III. TERMS OF THE SETTLEMENT

The specific terms of the settlement are fully set forth in the Settlement Agreement, attached hereto as Exhibit B. For purposes of this Motion, a summary of key terms of the Settlement Agreement are provided below:

#### A. Leave to File First Amended Complaint

As part of the settlement, the Parties have agreed that Plaintiffs will seek leave to file the proposed FAC amending the allegations and class definition as set forth in Section II(C) above. Permitting the parties to amend the pleadings for purposes of settlement is both proper and routine. *See, e.g., Lemieux v. Global Credit & Collection Corp.*, 08-CV-1012 IEG(POR) (S.D. Cal. 2008) (first amended complaint allowed to certify a settlement class); *Simpson v. Fireman's Fund Ins. Co.*, 2007 WL 46785 (N.D. Cal. 2007) (granting motion for preliminary approval of class action settlement and modifying class definition); *Rodriguez v. West Pub. Corp.*, 2007 WL 2827379 (C.D. Cal. 2007) (where the Court had entered an order granting motion for preliminary approval of class action settlement and modifying definition of previously certified class), *affirmed in part and reversed in part on other grounds*.

#### B. Settlement Consideration

Barclays shall establish a settlement fund in the amount of $125 multiplied by the number of Class Members at the time of Final Judgment ("Settlement Fund"), but not to exceed $8,262,500

under any circumstances. Each Class Member shall share, pro rata, in the Settlement Fund after reasonable attorney's fees and costs as approved and awarded by the Court and the costs of claims administration are deducted from the Settlement Fund.

Class Members who have a credit card account balance with Barclays, as well as Class Members who have an open credit card account with Barclays, will receive a pro rata share of the Settlement Fund in the form of a credit to the Class Member's Barclays' credit card account.

All other Class Members who are not entitled to receive an account credit will receive a pro rata share of the Settlement Fund as a check. The Parties estimate that each Class Member's pro rata share of the Settlement Fund, paid either as an account credit or as a check, will be approximately $100.

**C.     Cy Pres**

Any funds from uncashed settlement checks and checks to Class members that could not be delivered will be contributed to a cy pres fund. The Parties have designated the Legal Aid Society of San Diego, Inc., located at 110 S. Euclid Avenue, San Diego, CA 92114, as the cy pres recipient, subject to Court approval.

**D.     Attorneys' Fees Award**

Class Counsel shall move the Court for an award of attorney's fees and costs ("Motion for Fees") not to exceed $1,580,000. Any award of attorney's fees and costs approved by the Court shall be paid from the Settlement Fund. Barclays shall not object to Class Counsel's Motion for Fees so long as the total amount requested by Class Counsel is not more than $1,580,000. Court approval of Class Counsel's attorney's fees and costs is not a condition of the settlement.

**E.     Costs of Class Administration**

The Parties propose using CPT Group, Inc. ("Claims Administrator"), a third-party claims administrator, to assist with claims administration. The Claims Administrator's responsibilities will include, but not limited to, fielding inquiries about the settlement and mailing the notice, the settlement payments and the CAFA notices. The cost of claims administration shall be paid from the Settlement Fund. The Parties anticipate the cost of claims administration will be approximately

$70,000.

## F. Incentive Award For Class Representatives

Plaintiffs Ramon Gutierrez and Clariza Gutierrez will each apply to the Court for an incentive award of up to $10,000 for their service as Class Representatives in this action. Any incentive awards approved by the Court will be paid by Barclays directly to Plaintiffs and will not reduce the Settlement Fund. Barclays will apply any incentive award approved by the Court for Plaintiff Ramon Gutierrez first as a credit to his outstanding Barclays' credit card account balance, and then pay the remaining balance as a check. For Plaintiff Clariza Gutierrez, who does not owe any outstanding debt to Barclays, Barclays will pay any incentive award approved by the Court as a check.

## G. Notice of Class Action Settlement

The Notice will be mailed to each Class Member by the Claims Administrator using the last known address provided by Barclays. The Notice will, among other things, (1) inform the class members of the basis of the claims raised in the action and payment under the settlement, (2) describe how and when to object to, or exclude themselves from the settlement, (3) inform class members of their right to appear in the action through their own attorney, and (4) provide contact information for Class Counsel or the Claims Administrator for questions about the action or proposed settlement. The proposed Notice is attached hereto as Exhibit C.[4]

The class administrator will also maintain a settlement website as well as a toll free settlement call center from which Class Members can obtain further information regarding the settlement.

## H. CAFA Notice

In compliance with CAFA and the Settlement Agreement, within 10 days of the Court's order preliminarily approving the settlement, the Claims Administrator will send the CAFA notice to the appropriate state and federal officials.

---

[4] The Proposed Notice is also attached as Exhibit B to the Settlement Agreement.

I.  Release

Plaintiffs and each Class Member, (other than those persons who have timely and properly filed an exclusion request), on behalf of themselves and their agents, administrators, servants, employees, representatives, assigns, heirs, executors, trustees, joint venturers, partners, successors, predecessors and attorneys, and each of them (collectively the "Releasing Persons"), will jointly and severally release and discharge Barclays and all of its former, present and future direct and indirect parents, affiliates, subsidiaries, successors and predecessors and all of their respective former, present and future officers, directors, shareholders, employees, servants, agents, attorneys, representatives, independent contractors and vendors (collectively the "Released Parties") from any and all actions, causes of action, obligations, costs, expenses, damages, losses, claims, liabilities, and demands, of whatever character, known or unknown, arising out of, relating to, or in connection with, the FAC, the Confirming Text Message, and the administration of this settlement.

Further, Plaintiffs will dismiss with prejudice, and hereby release and discharge their individual claims against the Released Parties relating to or arising out of the Complaint, and shall dismiss without prejudice their class claims relating to or arising out of the Complaint. As consideration for Plaintiffs' release of their individual claims relating to or arising out of the Complaint, Barclays will request the credit reporting agencies to which it furnishes information to delete any reference to the Barclays' account from the Plaintiffs' credit history.

### IV.  LEGAL ANALYSIS

Federal Rule of Civil Procedure 23(e)(1)(A) requires court approval of any settlement of claims brought on a class basis. Approval of a class action settlement occurs in two steps. First, the Court conditionally certifies the class and grants preliminary approval of the settlement. Second, after the settlement is preliminarily approved and notice of the settlement is provided to the class, the Court conducts a fairness hearing to determine if the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation (4th ed. 2004) § 21.632; *In re NASDAQ Market Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). The instant Motion is submitted in support of the first step of the settlement approval process.

A.  **The Proposed Class Satisfies the Requirements of Rule 23**

Before granting preliminary approval of a settlement, the Court must determine that the proposed class can be certified for settlement purposes. *See Manual for Complex Litigation* (4th ed. 2004) § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Rule 23 governs the issue of class certification, whether the proposed class is a litigated class or, as here, a settlement class. All criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes.

Certification is appropriate where the proposed class and the proposed class representatives meet the four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one of the three requirements of Rule 23(b). Certification of a class action for damages requires a showing that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The Parties agree that the requirements for class certification under Rule 23 have been met for the sole purpose of effectuating settlement of this disputed claim. Nothing in regard to the settlement of this disputed claim shall be construed as an admission that Plaintiffs have satisfied the substantive requirements of Rule 23. Further, the treatment of this matter as a class action for purposes of settlement shall not be admissible to support class certification in any other matter. In the event that the settlement is not approved, the Parties agree that any agreement or order certifying a settlement class shall be null and void and the parties shall return to their respective positions at the time this Motion was submitted to the Court for approval.

1.  **The Members of the Settlement Class Are Sufficiently Numerous**

The first requirement for maintaining a class action under Rule 23(a) is that the class is so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). Generally, the numerosity requirement is satisfied when the class comprises of 40 or more members. *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007). In this case, the class has been

estimated to consist of approximately 66,100 class members as of the date of this Motion submission. Therefore, the proposed class meets the first prerequisite of Rule 23.

### 2. The Requirement Of Commonality Is Satisfied

The second prerequisite to class certification is the existence of questions of law or fact that are common to the class. Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has made clear that the commonality requirement is to be "construed permissively." *Dukes v. Wal-Mart, Inc.*, 774 F.3d 1214, 1225 (9th Cir. 2007). Commonality can be established by showing "that the class is united by a common interest." *See Blackie v. Barrack*, 524 F.2d 891, 901 (1975) (holding that "slight differences in class members' positions" will not defeat commonality). The existence of "shared legal issues" will satisfy the commonality requirement even if there are "divergent factual predicates." *Dukes*, 774 F.3d at 1225. Because the test of commonality is qualitative rather than quantitative, "one significant issue common to the class may be sufficient to warrant certification." *Id.*

Here, because each of the class members received the Confirming Text Message, one significant common issue is presented: whether the Confirming Text Message violates Section 227(b)(a)(A) of the TCPA. Therefore, the second prerequisite of Rule 23 is satisfied for settlement purposes.

### 3. The Requirement Of Typicality Is Satisfied

The third prerequisite to class certification is that Plaintiffs' claims are typical of those of the class. Fed. R. Civ. P. 23(a)(3). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The test for typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).

In this case, the claims of the representative Plaintiffs arise from Barclays' sending of the Confirming Text Message. Because this same text message was sent to the class members, there is a unity of interest between Plaintiffs and the class members they seek to represent. Stated differently, the same violation of the TCPA alleged by Plaintiffs arising from the Confirming Text Message is the same violation at issue as to the class members. Therefore, Plaintiffs' claims are typical of the claims of the class members.

### 4. The Requirement of Adequate Representation Is Satisfied

The final requirement of Rule 23(a) is that the representative plaintiffs fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." *Dukes*, 509 F.3d at 1185.

Here, Plaintiffs have the same interests as the class members they seek to represent because this action is based on the same Confirming Text Message sent by Barclays to Plaintiffs and the class members. Accordingly, Plaintiffs have no interests antagonistic to the interests of the proposed class.

Additionally, Plaintiffs are represented by counsel who are qualified in class action litigation and have had extensive experience in TCPA class action lawsuits. *Carrizosa v. Stassinos*, 669 F.Supp.2d 1081 (N.D. Cal., 2008); *Hunt v. Check Recovery Systems, Inc.*, 241 F.R.D. 505 (N.D. Cal. 2007); *Wyatt v Creditcare, Inc.*, 2005 WL 2780684 (N.D. Cal., 2005); and *Abels v JBC Legal Group, P.C.*, 227 F.R.D. 541 (N.D. Cal., 2005). *See* Declarations of Joshua B. Swigart and Robert L. Hyde, attached hereto as Exhibits D and E. Therefore, Plaintiffs and their counsel adequately represent the class.

### 5. The Action Meets the Requirements of Rule 23(b)(3)

Once the four prerequisites of Rule 23(a) are met, "the potential class must also satisfy at least one provision of Rule 23(b)." *Rosario*, 963 F.2d at 1017; *see also General Tel Co. v. Falcon*, 457 U.S. 147, 161 (1982). Rule 23(b)(3) states that a class may be certified when "questions of law or fact common to the members of the class predominate over any questions affecting only

individual members, and [...] a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The common issue presented in this action is whether the Confirming Text Message sent by Barclays violates the TCPA. Because this action is predicated on the same text messages sent to each class member, this common issue predominates over any individual issue.

Additionally, a class action is superior to other available methods for the fair and efficient adjudication of the controversy because there are approximately 66,100 class members who received the same Confirming Text Message Plaintiffs received. Accordingly, by utilizing the class action vehicle, relief can be provided to these class members without the need for multiple separate trials on the same facts (the receipt of the Confirming Text Message) and same law (whether the Confirming Text Message violates the TCPA). Hence, a class action will achieve economies of time, effort and expense, as well as promote uniformity of decision as to persons similarly situated.

Because this is a settlement class, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial").

Accordingly, the Parties stipulate solely for purposes of this settlement that the class is suitable for certification for settlement purposes and the Court should certify the settlement class pursuant to Rule 23(b)(3) for purposes of granting preliminary approval of the settlement.

**B.   The Court Should Preliminary Approve The Proposed Settlement**

Once a settlement class is certified, the Court examines whether to preliminarily approve the settlement. At the preliminary approval stage, the Court need only consider whether the proposed class action settlement is "within the range of possible approval" and thus may be submitted to members of the prospective class for their acceptance or rejection. Manual for Complex Litigation § 30.45 (3rd ed. 1995). This is different from the ultimate fairness determination conducted for final approval of the settlement. Rather, at this preliminary juncture, the inquiry is limited to whether to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Id.* The Court should grant preliminary approval if the proposed settlement appears to be "the product of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re NASDAQ Market Makers*, 176 F.R.D. at 102.

A strong judicial policy exists that favors the voluntary conciliation and settlement of complex class action litigation. *In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982). While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In fact, when a settlement is negotiated at arms' length by experienced counsel, there is a presumption that it is fair and reasonable. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001).

1. **The Settlement Is A Product Arms' Length Negotiations**

This settlement was reached by experienced counsel on both sides only after extensive discovery, motion practice and non-collusive negotiations, and hence, is entitled to a presumption of fairness. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 380.

**First**, the Parties conducted comprehensive discovery in this action prior to engaging in any settlement discussions. Specifically, Plaintiffs propounded, and Barclays responded to, 19 Interrogatories and 13 Requests for Production. Likewise, Barclays propounded, and Plaintiffs responded to, 34 Interrogatories, 44 Requests for Admission and 15 Requests for Production. Further, on December 28, 2010, Barclays deposed both Ramon Gutierrez and Clariza Gutierrez. On March 17, 2011, Plaintiffs deposed two separate corporate representatives of Barclays in Wilmington, Delaware. Plaintiffs also filed a motion to compel Barclays outbound call log for the past four years, which Barclays opposed. Plaintiffs' motion to compel resulted in four separate hearings, resulting in a stipulation and order for partial production of Barclays' outbound dial list. On December 27, 2010, Plaintiffs also served a subpoena on a third party seeking additional call data information.

**Second**, on January 7, 2011, Barclays filed a motion for summary judgment, which was fully briefed by the Parties and ruled on by the Court.

**Third,** the proposed settlement is the result of extended arm's-length negotiations between the Parties. The Parties retained the Honorable Leo Papas (Ret.) and engaged in an all-day mediation, exchanging multiple offers and counter-offers. The negotiation was hard fought and non-collusive. Further, Judge Papas, a well respected jurist with ample experience in consumer class actions, recommended the settlement. Accordingly, there can be no dispute that the Settlement was reached through non-collusive arm's length negotiations by the Parties. *Liebman,* 73 F.R.D. at 535.

**Fourth**, both parties were represented by experienced class action counsel in this action. As proven by the declarations attached as Exhibits D and E, Class Counsel are experienced consumer class action lawyers. Given that experience and expertise, Class Counsel is well qualified to assess the prospects of the case and to negotiate a favorable resolution for the class. Barclays' attorneys also have extensive class action experience, and have litigated numerous consumer class actions across the nation in both state and federal courts. The informed conclusion by the Parties, whose counsel are experienced in both TCPA litigation and class action litigation, should be given deference. *In re Inter-Op Hip Prosthesis Liab. Litig.,* 204 F.R.D. 359, 380 (N.D. Ohio 2001).

2.     **The Settlement Is Fundamentally Fair, Reasonable And Adequate**

Further, there can be little doubt that the settlement is fair, reasonable and adequate, and hence, necessarily satisfies the "within the range of possible approval" standard for preliminary approval. Although Plaintiffs strongly believe that the Confirming Text Message violates the TCPA, Plaintiffs are aware that the jury, the Court on a dispositive motion, or a court on appeal, may determine that:

(1)     Barclays did not use an "automatic telephone dialing system" to send the Confirming Text Message as prohibited by the TCPA;

(2)     the Confirming Text Message is a "normal, expected or desired" communication between a creditor and a debtor falling outside the purview of the TCPA.

(3)     the Confirming Text Message falls within the 30 day safe harbor provision for honoring TCPA cease and desist requests.

(4)     the Confirming Text Message falls within the FDCPA's safe harbor provision

1  expressly permitting a confirmation to the debtor that the cease and desist request will be honored.
2  *See* pp. 6-7 above.
3        Against these risks, uncertainties and delays, the proposed settlement provides each class
4  member with an estimated $100 settlement payment, either as an account credit or cash. This
5  recovery per class member is well within the range of other TCPA class actions that have been
6  approved for settlement. *Lemieux v. Global Credit and Collection Corp.*, 08-CV-01012 IEG(POR)
7  (S.D. Cal. 2008) (awarding up to a $70 cash payment made on a claims made basis); *Bellows v. NCO*
8  *Financial Systems, Inc.*, 07-CV-1413 W (AJB) (S.D. Cal. 2007) (awarding up to a $70 cash payment
9  made on a claims made basis); *Arthur, et al. v. SLM Corp.*, 20-CV-00198 JLR (W.D. Wash. 2010)
10 (preliminary approval granted with an anticipated claims payout ranging from $20-$40).
11       Moreover, this is <u>not</u> a claims made settlement. Rather, each class members will equally and
12 automatically receive an estimated $100 payment either as a credit or check. *Lemieux v. Global*
13 *Credit and Collection Corp.*, 08-CV-01012 IEG(POR) (S.D. Cal. 2008); *Bellows v. NCO Financial*
14 *Systems, Inc.*, 07-CV-1413 W (AJB) (S.D. Cal. 2007) (approving claims made TCPA class action
15 settlement). Accordingly, in Class Counsel's view, this settlement represents one of the best
16 outcomes for this action.

17 **C.     The Proposed Plan of Notice Satisfies the Requirements of Rule 23 and Due Process**
18       "The court must direct notice in a reasonable manner to all class members who would be
19 bound by the proposal." Fed. R. Civ. Proc. 23(e). Rule 23(e) requires that notice of a proposed
20 settlement inform class members of the following: (1) the nature of the pending litigation; (2) the
21 general terms of the proposed settlement; (3) that complete information is available from the court
22 files; and (4) that any class member may appear and be heard at the fairness hearing. 4 Alba Conte
23 & Herbert B. Newberg, *Newberg on Class Actions* § 8.32 at 262-68 (4th ed. 2002). The notice must
24 also indicate an opportunity to opt out, that the judgment will bind all class members who do not opt
25 out, and that any member who does not opt out may appear through counsel. Fed. R. Civ. P.
26 23(c)(2). As a general rule, due process requires individualized notice where the names and
27 addresses of class members "may be ascertained through reasonable effort." *Eisen v. Carlisle and*
28 *Jacquelin*, 417 U.S. 156, 173, 177 (1974).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Here, the Settlement Agreement details the procedure for implementing the settlement and notifying the class members. After entry of preliminary approval, each class member identified in Barclays' records as having received the Confirming Text Message will receive direct and individual notice, via first class mail, of the proposed settlement at his or her last known address provided by Barclays. Accordingly, the method of providing notice complies with due process requirements. *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980).

Further, the Notice meets all of the requirements of Rule 23(e): it identifies the parties to the action and describes the action and the Class in a straightforward manner; it succinctly describes the essential terms of the settlement and identifies all parties against whom claims are being released; it provides class members with information on how to opt-out of the Class and provides all applicable deadlines for such action; and it informs class members that if they do not exclude themselves from the class, and the settlement is approved, they will be bound by the resulting judgment. In addition, the Notice instructs class members to contact Class Counsel or the Claims Administrator to obtain more detailed information and provides information regarding counsel's fees and costs application. In short, the Notice will provide the necessary information for class members to make an informed decision regarding the proposed settlement.

### D. Proposed Preliminary Schedule

The parties propose that the Court establish the following deadlines related to the proposed settlement:

1. <u>Notice by Mail</u>: to be completed within 30 days from entry of the Order Granting Joint Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order").

2. <u>Entry of Appearance</u>: Must be filed with the Court no later than 90 days from completion of Notice.

3. <u>Requests for Exclusion Due</u>: Must be received by the Claims Administrator and postmarked no later than 90 days from completion of Notice.

4. <u>Objections Due</u>: Must be filed with the Court no later than 90 days from completion of Notice.

5. <u>Final Approval Hearing ("Fairness Hearing")</u>: 30 days after deadline to request exclusion

or object to Class Action Settlement as the Court's schedule permits.

      6. <u>Submission of Papers in Support of Final Approval and Incentive Award</u>: 10 days prior to Fairness Hearing date.

      7. <u>Submission of Motion for an Award of Costs, Expenses and Attorneys' Fees</u>: 14 days after Final Approval has been entered pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure.

## V.   CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court grant preliminary approval of the proposed settlement and enter the Proposed Order filed concurrently with this Motion.

DATED: September 27, 2011.

REED SMITH LLP

By   /s/   *Jordan Yu*
Jordan Yu
Attorneys for Defendant
Barclays Bank Delaware

DATED: September 27, 2011.

HYDE & SWIGART

By   /s/   *Joshua B. Swigart*
Joshua B. Swigart, Esq.
Attorneys for Plaintiffs
Ramon Gutierrez and Clariza Gutierrez

*I, Jordan Yu, hereby certify that the content of this document is acceptable to all persons required to sign this document and that I obtained the authorizations necessary for the electronic signatures of all parties for this document.*