Abraham J. Colman (SBN 146933)
acolman@reedsmith.com
Felicia Y. Yu (SBN 193316)
fyu@reedsmith.com
Jordan Yu (SBN 227341)
jsyu@reedsmith.com
REED SMITH LLP
355 S. Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone:   213.457.8000
Facsimile:   213.457.8080

Attorneys for Defendant
Barclays Bank Delaware, erroneously sued herein as Barclays Group, d.b.a., Barclaycard, d.b.a., Barclays Bank, d.b.a., Barclays Bank Delaware, d.b.a., Barclays Bank of Delaware, N.A., Barclaycard Funding, PLC a Delaware Corporation.

Joshua B. Swigart (SBN: 225557)
josh@westcoastlitigation.com
Robert L. Hyde (SBN 227183)
bob@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Ste. 411
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 330-4657

Attorneys for Plaintiffs Ramon Gutierrez and Clariza Gutierrez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ramon Gutierrez and Clariza Gutierrez, on behalf of themselves and all others similarly situated<br><br>Plaintiff<br><br>vs.<br><br>Barclays Group, d.b.a. Barclaycard, d.b.a. Barclays Bank, d.b.a., Barclays Bank Delaware, d.b.a., Barclays Bank of Delaware, N.A., Barclaycard Funding, PLC, a Delaware Corporation,<br><br>Defendants. | Case No.: 10-CV-1012 DMS BGS<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Honorable Dana M. Sabraw |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................... 1

II. STATEMENT OF THE CASE ......................................................................... 1

    A.    Plaintiffs Contend That A Text Message Sent By Barclays Violates The TCPA ................................................................................................... 1

    B.    Barclays Contends That The Confirming Text Message Does Not Violate The TCPA ......................................................................................... 2

III. TERMS OF THE SETTLEMENT .................................................................. 4

    A.    Class Definition ................................................................................... 4

    B.    Settlement Consideration .................................................................... 4

    C.    Cy Pres ................................................................................................ 4

    D.    Attorneys' Fees Award ....................................................................... 5

    E.    Costs of Class Administration ............................................................ 5

    F.    Incentive Award For Class Representatives ...................................... 5

    G.    Release ................................................................................................ 5

IV. NOTICE TO CLASS MEMBERS AND GOVERNMENT OFFICIALS ....... 6

V. LEGAL ANALYSIS ......................................................................................... 7

    A.    The Settlement Is Fair, Reasonable And Adequate ........................... 8

        1.    Plaintiffs' Case Is Not So Strong As To Make Settlement Unreasonable ........................................................................... 8

        2.    The Risk And Expense Of Continued Litigation Is High ...... 9

        3.    The Probability Of Maintaining Class Action Status Is Uncertain ................. 10

        4.    The Amount Offered In Settlement Favors Final Approval ........................... 10

        5.    Class Counsel Recommend This Settlement ....................... 11

        6.    The Parties Engaged In Extensive Discovery And Motion Practice Prior To Settlement ........................................................................................ 11

        7.    A Well Respected Neutral Recommends The Settlement ............................. 12

        8.    The Reaction of Class Members Is Highly Favorable ....................... 12

    B.    Uncashed Settlement Checks Should be Distributed To A Cy Pres .............................. 13

VI. CONCLUSION ................................................................................................... 13

US_ACTIVE-108573476.2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

**Cases**

*Arthur, et al. v. SLM Corp.*,
  20-CV-00198 JLR (W.D. Wash. 2010) ............................................................. 10

*Bellows v. NCO Financial Systems, Inc.*,
  07-CV-1413 W (AJB) (S.D. Cal. 2007) ............................................................. 10

*Cunningham v. Credit Management, L.P.*,
  2010 WL 3791104 (N.D. Tex. 2010) ................................................................. 3

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..................................................................... 7, 11

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
  204 F.R.D. 380 ............................................................................................... 12

*In re Nasdaq Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ..................................................................... 10

*In re OmniVision Tech. Inc.*,
  559 F.Supp. 2d 1036 (N.D. Cal. 2008) ..................................................... 9, 11, 12

*In re Pacific Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ............................................................................ 11

*In re Warner Communications Sec. Lit.*,
  618 F. Supp. 735 (D.C.N.Y 1985) .................................................................... 9

*Lemieux v. Global Credit and Collection Corp.*,
  08-CV-01012 IEG(POR) (S.D. Cal. 2008) ....................................................... 10

*Liebman*,
  73 F.R.D. 535 ................................................................................................. 12

*Lipuma v. Am. Express Co.*,
  406 F. Supp. 2d 1323 (S.D. Fla. 2005) .............................................................. 9

*Lo v. Oxnard European Motors, LLC, et al.*,
  11-CV-1009 JLS(MDD) (S.D. Cal. 2011) ....................................................... 10

*Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .................................................................... 12

*Officers for Justice v. Civil Ser. Com.*,
  688 F.2d 615 (9th Cir. 1982) ................................................................ 7, 8, 9, 10

*Protective Comm. for Indep. Stockholders v. Anderson*,
  390 U.S. 414 (1968) ......................................................................................... 8

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ........................................................................ 13

| | |
|---|---|
| *Starkey v. Firstsource Advantage, LLC*, 2010 WL 2541756 (W.D.N.Y. Mar. 11, 2010) | 3 |
| *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) | 7 |
| *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) | 7 |

**Statutes**

| | |
|---|---|
| 15 U.S.C. § 1692 | 3 |
| 15 U.S.C. § 1692c(c)(1)-(2) | 3 |
| 28 U.S.C. § 1715(d) | 7, 12 |
| 47 U.S.C. § 227 | 1 |
| 47 U.S.C. § 227(a)(1)(A) | 2 |
| 47 U.S.C. § 227(b)(1)(A) | 1, 3 |

**Rules**

| | |
|---|---|
| Fed. R. Civ. P. 23(e) | 7 |
| Fed. R. Civ. P. 23(e)(2) | 7 |

**Regulations**

| | |
|---|---|
| 47 C.F.R. § 64.1200(a)(vi) | 3 |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In this putative nationwide class action, Plaintiffs Ramon Gutierrez and Clariza Gutierrez (collectively "Plaintiffs") assert two causes of action against Defendant Barclays Bank Delaware ("Barclays"): (1) negligent violation of Section 227(b)(1)(A) of the Telephone Consumer Protection Act ("TCPA"), codified at 47 U.S.C. § 227 *et seq.*, and (2) willful violation of Section 227(b)(1)(A) of the TCPA. Specifically, Plaintiffs allege that Barclays violated Section 227(b)(1)(A) of the TCPA by sending a 'confirming text message' to Plaintiffs' cellular telephone: a message confirming that Barclays will no longer send any further text messages to Plaintiffs.

On May 4, 2011, after engaging in extensive discovery and motion practice for over one year, the Parties attended an all day mediation before the Honorable Leo Papas (Ret.) and reached a settlement in this action. On October 11, 2011, the Court entered an Order Granting Preliminarily Approval of Class Action Settlement ("Preliminary Approval Order"), which (1) granted Plaintiffs leave to file a first amended complaint, (2) certified a class for settlement purposes only, (3) preliminarily approved settlement of the action, (4) appointed Joshua B. Swigart and Robert L. Hyde of Hyde & Swigart as Class Counsel, (5) appointed Ramon and Clariza Gutierrez as the Class Representatives, (6) approved the proposed plan of providing notice to the class, and (7) approved the preliminary schedule for providing notice to the class and for class members to submit requests for exclusion or objections to the proposed settlement. [Document 50]

The Parties now respectfully move for final approval of the settlement as fair, reasonable and adequate.

## II. STATEMENT OF THE CASE

### A. Plaintiffs Contend That A Text Message Sent By Barclays Violates The TCPA

Plaintiffs' First Amended Complaint ("FAC") asserts two causes of action: (1) negligent violation of Section 227(b)(1)(A) of the TCPA and (2) willful violation of Section 227(b)(1)(A) of the TCPA. Section 227(b)(1)(A) of the TCPA provides as follows:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United

-1-

States-
    (A) To make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or pre-recorded voice

. . .

    (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call ...

The FAC alleges that on or about April 28, 2010, three text messages were exchanged between Barclays and Plaintiffs in the following sequence:

(1)      From Barclays to Plaintiffs:

> FREE alert: Courtesy Reminder for your Juniper Bank MasterCard. Please Press SEND <u>866-740-4298</u> to speak to us.
> Reply STOP to end messages.

(2)      From Plaintiffs to Barclays:

> Stop.

(3)      From Barclays to Plaintiffs:
> You will no longer receive text alerts from Barclaycard to this number. If you have questions, call <u>866-408-4070.</u>

("Confirming Text Message")

The FAC alleges that the Confirming Text Message violates the TCPA because it is a "call" to a cellular telephone after consent has been expressly revoked by Plaintiffs.

**B.**      **Barclays Contends That The Confirming Text Message Does Not Violate The TCPA**

Barclays denied from the outset, and continues to deny, that the Confirming Text Message violates the TCPA. First, Barclays contends that the Confirming Text Message was not sent using an "automatic telephone dialing system" as prohibited by the TCPA. Rather, Barclays contends that the Confirming Text Message was sent using a dialing system that does not, and does not have the capacity or capability to, randomly or sequentially generate or dial telephone numbers. 47 U.S.C. §

227(a)(1)(A).

Second, Barclays contends that the TCPA was not intended to prohibit "normal, expected or desired" communications between a creditor and a debtor:

> The Committee does not intend for this restriction to be a barrier to the normal, expected or desired communications between businesses and their customers. For example, a retailer, insurer, banker or other creditor would not be prohibited from using an automatic dialer recorded message player to advise a customer (at the telephone number provided by the customer) that an ordered product had arrived, a service was scheduled or performed, or a bill had not been paid. *Telephone Advertising Consumer Rights Act*, H.R. Rep. No. 102-317, at 17 (1991).

Accordingly, Barclays contends that a text message simply advising a cardholder that Barclays has received, and will honor, the cardholder's "stop" request does not violate the TCPA.

Third, the TCPA itself – in the context of both junk faxes and solicitation calls to residential lines– affords a defendant 30 days to honor a cease and desist request. 47 C.F.R. § 64.1200(a)(vi). Accordingly, although no specific regulation speaks to the timeframe for honoring a cease and desist request in the context of Section 227(b)(1)(A), Barclays contends that a 30 day safe harbor provision would also apply to Section 227(b)(1)(A) and that a confirming text message sent immediately after the "stop" request was received does not violate the TCPA.

Fourth, in interpreting the TCPA for alleged debt collection activity, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. Section 1692 *et seq.*, provides interpretive guidance. *See Starkey v. Firstsource Advantage, LLC*, 2010 WL 2541756, *6 (W.D.N.Y. Mar. 11, 2010); *Cunningham v. Credit Management, L.P.*, 2010 WL 3791104, *4 (N.D. Tex. 2010). Under the FDCPA, "If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, *except-- (1) to advise the consumer that the debt collector's further efforts are being terminated; (2) to notify the consumer that the debt collector's further efforts are being terminated*[.]" 15 U.S.C. § 1692c(c)(1)-(2) (emphasis added).

Accordingly, Barclays contends that the Confirming Text Message does not violate the TCPA.

### III. TERMS OF THE SETTLEMENT

The specific terms of the settlement are fully set forth in the Settlement Agreement. [Document 49-3] For purposes of this Motion, a summary of key terms of the Settlement Agreement are provided below:

**A.  Class Definition**

The class is defined in the FAC as follows: All persons within the United States who are present or former cardholders of Barclays, who have not filed for bankruptcy and who are not deceased, who received a Confirming Text Message on their cellular telephone(s) sent by Barclays, its agents or contractors, on or after May 12, 2006 through the present, which were not sent for emergency purposes or with the recipient's prior express consent. FAC ¶ 22, [Document 49-2]

**B.  Settlement Consideration**

Barclays shall establish a settlement fund in the amount of $125 multiplied by the number of Class Members at the time of Final Judgment ("Settlement Fund"), but not to exceed $8,262,500 under any circumstances. Each Class Member shall share, pro rata, in the Settlement Fund after reasonable attorney's fees and costs as approved and awarded by the Court and the costs of claims administration are deducted from the Settlement Fund.

Class Members who have a credit card account balance with Barclays, as well as Class Members who have an open credit card account with Barclays, will receive a pro rata share of the Settlement Fund in the form of a credit to the Class Member's Barclays' credit card account.

All other Class Members who are not entitled to receive an account credit will receive a pro rata share of the Settlement Fund as a check. The Parties estimate that each Class Member's pro rata share of the Settlement Fund, paid either as an account credit or as a check, will be approximately $100.

**C.  Cy Pres**

Any funds from uncashed settlement checks and checks to Class Members that could not be delivered will be contributed to a cy pres fund. The Parties have designated the Legal Aid Society of San Diego, California, located at 110 S. Euclid Avenue, San Diego, CA 92114, as the cy pres recipient, subject to Court approval.

### D. Attorneys' Fees Award

Class Counsel shall move the Court for an award of attorney's fees and costs not to exceed $1,580,000. Any award of attorney's fees and costs approved by the Court shall be paid from the Settlement Fund. Barclays shall not object to Class Counsel's request for reasonable attorneys' fees and costs so long as the total amount requested by Class Counsel is not more than $1,580,000, which represents approximately 19% of the Settlement Fund. Court approval of Class Counsel's attorney's fees and costs is not a condition of the settlement. Class Counsel has filed a separate motion with the Court seeking approval of their attorneys' fees and costs. [Document 53]

### E. Costs of Class Administration

CPT Group, Inc. has been appointed by the Court as the third party Claims Administrator. The Claims Administrator's responsibilities include, but not limited to, fielding inquiries about the settlement and mailing the settlement notices and the settlement payments. The cost of claims administration shall be paid from the Settlement Fund. The Parties anticipate that the cost of claims administration will be approximately $67,000.

### F. Incentive Award For Class Representatives

Plaintiffs Ramon and Clariza Gutierrez will each apply to the Court for an incentive award of up to $10,000 for their service as Class Representatives in this action. Any incentive awards approved by the Court will be paid by Barclays directly to Plaintiffs and will not reduce the Settlement Fund. Barclays will apply any incentive award approved by the Court for Plaintiff Ramon Gutierrez first as a credit to his outstanding Barclays' credit card account balance, and then pay the remaining balance as a check. For Plaintiff Clariza Gutierrez, who does not owe any outstanding debt to Barclays, Barclays will pay any incentive award approved by the Court as a check. Plaintiffs Ramon and Clariza Gutierrez have filed a separate motion with the Court seeking approval of their incentive awards. [Document 53]

### G. Release

Plaintiffs and each Class Member, (other than those persons who have timely and properly filed an exclusion request), on behalf of themselves and their agents, administrators, servants, employees, representatives, assigns, heirs, executors, trustees, joint venturers, partners, successors,

-5-

predecessors and attorneys, and each of them (collectively the "Releasing Persons"), will jointly and severally release and discharge Barclays and all of its former, present and future direct and indirect parents, affiliates, subsidiaries, successors and predecessors and all of their respective former, present and future officers, directors, shareholders, employees, servants, agents, attorneys, representatives, independent contractors and vendors (collectively the "Released Parties") from any and all actions, causes of action, obligations, costs, expenses, damages, losses, claims, liabilities, and demands, of whatever character, known or unknown, arising out of, relating to, or in connection with, the FAC, the Confirming Text Message, and the administration of this settlement.

Further, Plaintiffs will dismiss with prejudice, and hereby release and discharge their individual claims against the Released Parties relating to or arising out of the Complaint, and shall dismiss without prejudice their class claims relating to or arising out of the Complaint. As consideration for Plaintiffs' release of their individual claims relating to or arising out of the Complaint, Barclays will request the credit reporting agencies to which it furnishes information to delete any reference to the Barclays' account from the Plaintiffs' credit history.

## IV. NOTICE TO CLASS MEMBERS AND GOVERNMENT OFFICIALS

On or about October 25, 2011, Barclays provided the Claims Administrator the list of Class Members, consisting of the names and last known addresses of 65,479 individuals. Declaration of Abel Morales, ¶ 6, attached hereto as Exhibit A; Declaration of Timothy Olah, ¶ 4, attached hereto as Exhibit B. After verifying and updating each Class Member's last known address with the National Change of Address database, the Claims Administrator disseminated the settlement notice, via first class mail, to each Class Member by the Court ordered date of November 6, 2011. Morales Decl. ¶¶ 6-7. The notice contained a summary of the settlement terms, the address of the settlement information website (which contains, among other information, the Motion for Preliminary Approval of Class Action Settlement and the Order thereon and the Settlement Agreement) as well as a toll-free telephone number operated by the Claims Administrator to answer any questions concerning the settlement. *Id.* at ¶ 2.

The Class Members were given 90 days, until February 6, 2012, to opt out of the settlement or object to the settlement pursuant to the Preliminary Approval Order. [Document 50] To date, not

a single Class Member has objected to the settlement. Morales Decl. ¶ 11. Further, to date, only 29 of the 65,479 potential Class Members have submitted a request to be excluded from the settlement. *Id.* at ¶ 12.

In addition, on October 7, 2011, pursuant 28 U.S.C. § 1715(d) of CAFA, the Claims Administrator also sent notice to the appropriate state and federal officials of the settlement. Morales Decl. ¶ 3. To date, no government official or entity has filed or served an objection to the settlement. *Id.*

## V. LEGAL ANALYSIS

It is well settled that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Ser. Com.*, 688 F.2d 615, 625 (9th Cir. 1982). Indeed, "[t]here is an overriding public interest in settling and quieting litigation[,]" and this is "particularly true in class action suits[.]" *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

In approving a proposed settlement of a class action under Federal Rule of Civil Procedure 23(e), the Court must find that the proposed settlement is "fair, reasonable and adequate." Fed. R. Civ Proc. 23(e)(2). In the Ninth Circuit, courts consider several non-exclusive factors in evaluating whether a class action settlement is fair, reasonable and adequate, including:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) *citing Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993).

Further, in evaluating a proposed class action settlement, the Ninth Circuit limits the scope of the court's inquiry as follows:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of

> outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Officers of Justice*, 688 F.2d at 625.

Here, it is clear that the settlement achieved in this action satisfies the requirements for final approval by the Court.

### A.   The Settlement Is Fair, Reasonable And Adequate

#### 1.   Plaintiffs' Case Is Not So Strong As To Make Settlement Unreasonable

"Basic to [analyzing a proposed settlement] in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of the litigation." *Protective Comm. for Indep. Stockholders v. Anderson*, 390 U.S. 414, 424-25 (1968). Class Counsel are confident in the strength of Plaintiffs' claims. However, they are also cognizant of the uncertainties of continued litigation.

Although Plaintiffs strongly believe that the Confirming Text Message violates the TCPA, Plaintiffs are aware that the jury, the Court on a dispositive motion, or a court on appeal, may determine that:

(1)   Barclays did not use an "automatic telephone dialing system" to send the Confirming Text Message as prohibited by the TCPA;

(2)   the Confirming Text Message is a "normal, expected or desired" communication between a creditor and a debtor falling outside the purview of the TCPA;

(3)   the Confirming Text Message falls within the 30 day safe harbor provision for honoring TCPA cease and desist requests; or

(4)   the Confirming Text Message falls within the FDCPA's safe harbor provision expressly permitting a confirmation to the debtor that the cease and desist request will be honored. *See* pp. 2-3 above.

Given these circumstances, Plaintiffs' case is not so strong that settlement is unreasonable.

### 2. The Risk And Expense Of Continued Litigation Is High

The next factor the Court must consider is "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement." *In re OmniVision Tech. Inc.*, 559 F.Supp. 2d 1036, 1041 (N.D. Cal. 2008). "The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held to take the bird in hand instead of a prospective flock in the bush." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1323 (S.D. Fla. 2005).

In the absence of the settlement, it is certain that the Parties will incur significant expense in what is anticipated to be a protracted and aggressively litigated action. First, significant costs and resources would be expended in briefing a dispositive motion filed by Barclays. Second, if this case proceeds beyond a dispositive motion, the Parties will incur further costs and resources briefing the motion for class certification and preparing for trial, including expenses for expert witnesses and travel expenses for trial witnesses residing outside of California, and counsel who do not reside in San Diego, California. Moreover, even if Plaintiffs could defeat summary judgment, certify an adversarial class, proceed to trial and ultimately prevail, any judgment favorable to Plaintiffs would be the subject of post-trial motions and appeals, which could prolong the case for several more years. *See e.g., In re Warner Communications Sec. Lit.*, 618 F. Supp. 735, 745 (D.C.N.Y 1985) (delay from appeals is a factor to be considered). Accordingly, early settlement of this litigation before significant additional resources are expended will benefit the class.

As the Ninth circuit has made clear, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624. "Naturally, the agreement reached normally embodies a compromise; in exchange for the savings of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation..." *Id.* As such, the substantial and immediate relief provided to the class under the settlement weighs heavily in favor of its approval compared to the risk of continued litigation, trial, and appeal.

### 3. The Probability Of Maintaining Class Action Status Is Uncertain

The Preliminary Approval Order certified a nationwide class for settlement purposes only. [Document 50] However, if the Court fails to grant final approval of the settlement for any reason, the certification of the class will automatically become void. *Id.* Although Plaintiffs believe they would be successful in obtaining certification of an adversarial class even absent the Settlement Agreement, Barclays has made it clear that it would vigorously oppose class certification. Further, even if Plaintiffs were successful in a motion for class certification, Barclays could move for decertification of the class before or during trial, and could also challenge certification on appeal. Accordingly, this factor also weighs in favor of approving the settlement as the Class would receive nothing if Plaintiffs cannot certify a class. *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) ("if class certification were to be reversed on appeal, the class members … would recover nothing at all.").

### 4. The Amount Offered In Settlement Favors Final Approval

Here, Plaintiffs secured from Barclays a Settlement Fund in the amount of $125 multiplied by the number of Class Members at the time of Final Judgment, and each Class Member will share, pro rata, in the Settlement Fund after reasonable attorney's fees and costs as approved and awarded by the Court and the costs of claims administration are deducted from the Settlement Fund.

This recovery per class member is superior than the range of other TCPA class actions that have been approved for settlement. *Lemieux v. Global Credit and Collection Corp.*, 08-CV-01012 IEG(POR) (S.D. Cal. 2008) (awarding up to a $70 payment made on a claims made basis); *Bellows v. NCO Financial Systems, Inc.*, 07-CV-1413 W (AJB) (S.D. Cal. 2007) (awarding up to a $70 payment made on a claims made basis); *Arthur, et al. v. SLM Corp.*, 20-CV-00198 JLR (W.D. Wash. 2010) (preliminary approval granted with an anticipated claims payout ranging from $20-$40); *Lo v. Oxnard European Motors, LLC, et al.* 11-CV-1009 JLS(MDD) (S.D. Cal. 2011) (granting preliminary approval with anticipated claims made payout of $131).

Moreover, this is <u>not</u> a claims made settlement. Rather, each Class Member will automatically receive an estimated $100 either as a credit or check. At the time the settlement was made, counsel believes it was the only settlement where each class member would receive the

benefit of the settlement fund, without being required to submit a claim. Declaration of Joshua Swigart, ¶¶ 13 and 14, attached hereto as Exhibit C. Accordingly, the amount offered in settlement strongly favors final approval.

### 5. Class Counsel Recommend This Settlement

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *In re OmniVision*, 559 F. Supp. 2d at 1043; *Hanlon*, 150 F.3d at 1027 (the court should give "proper deference to the private consensual decision of the parties."). Reliance on such recommendation is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, Class Counsel endorse and recommend this settlement as one of the best possible outcomes for this action. *See* Declaration of Joshua B. Swigart, attached hereto as Exhibit C. Class Counsel regularly engage in TCPA litigation and consumer class action litigation. That such qualified and well-informed counsel, operating at arm's length, all endorse the settlement as fair, reasonable and adequate to the Class heavily favors the Court's approval of the settlement. Swigart Decl. ¶ 14.

### 6. The Parties Engaged In Extensive Discovery And Motion Practice Prior To Settlement

Moreover, this settlement was reached by experienced counsel on both sides only after extensive discovery and motion practice. Specifically, Plaintiffs propounded, and Barclays responded to, numerous Interrogatories and Requests for Production. Likewise, Barclays propounded, and Plaintiffs responded to, numerous Interrogatories, Requests for Admission and Requests for Production. Further, on December 28, 2010, Barclays deposed both Ramon Gutierrez and Clariza Gutierrez. On March 17, 2011, Plaintiffs deposed two separate corporate representatives of Barclays in Wilmington, Delaware. *See* Swigart Decl. ¶ 3. Plaintiffs also filed a motion to compel Barclays' outbound call log for the past four years, which Barclays opposed. Plaintiffs' motion to compel required four separate hearings, and resulted in a stipulation and order for partial production

of Barclays' outbound dial list. On December 27, 2010, Plaintiffs also served a subpoena on a third party seeking additional call data information.

Further, on January 7, 2011, Barclays filed a pre-class certification motion for summary judgment, which was fully briefed by the Parties and ruled on by the Court. Accordingly, the Parties had extensive knowledge of the claims and defenses at the time the settlement was negotiated and entered into. *In re Omni Vision*, 559 F. Supp. 2d at 1042.

### 7. A Well Respected Neutral Recommends The Settlement

Moreover, the proposed settlement is the result of extended arm's-length negotiations between the Parties. The Parties retained the Honorable Leo Papas (Ret.) and engaged in an all-day mediation on May 4, 2011, exchanging multiple offers and counter-offers. Swigart Decl. ¶ 4. The negotiation was hard fought and non-collusive. Further, Judge Papas, a well respected jurist with ample experience in consumer class actions, recommended the settlement. Accordingly, there can be no dispute that the settlement was reached through non-collusive arm's length negotiations by the Parties, and hence, this settlement is entitled to a presumption of fairness. *Liebman*, 73 F.R.D. at 535; *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 380.

### 8. The Reaction of Class Members Is Highly Favorable

Pursuant to the Preliminary Approval Order, the Claims Administrator disseminated the settlement notice, via first class mail, to each of the 65,479 class members by the Court ordered date of November 6, 2011. The Class Members were given 90 days, until February 6, 2012, to opt out of the settlement or object to the settlement. [Document 50] To date, not a single Class Member has objected to the settlement. Morales Decl. ¶ 11. *In re OmniVision,* 559 F. Supp. 2d at 1043 ("By any standard, the lack of objection of the Class Members favors approval of the Settlement."); *Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.").

Further, to date, only 29 of the 65,479 Class Members have opted out of the settlement, which represents an opt out rate of just .04%. Morales Decl. ¶ 13. This can only be seen as

overwhelming support for the settlement by the Class.

In addition, on October 7, 2011, pursuant 28 U.S.C. § 1715(d) of CAFA, the Claims Administrator sent notice to the appropriate state and federal official of the settlement. Morales Decl. ¶ 3. As of January 7, 2012, the requisite 90 day CAFA notice period has been satisfied. To date, no government official or entity has filed or served an objection to the settlement. *Id.*

**B.  Uncashed Settlement Checks Should be Distributed To A Cy Pres**

The Ninth Circuit has noted that distribution of settlement monies to a Class may sometimes result in a balance remaining and that a cy pres donation may be ordered by the Court in such circumstances. *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1307-08 (9th Cir. 1990) (finding acceptable cy pres distribution for purpose of distributing unclaimed funds).

Here, pursuant to the terms of the Settlement Agreement, settlement checks uncashed within 90 days will expire and become void. Given the number of Class Members, the Parties anticipate that at least a small number of checks will remain uncashed after 90 days. To avoid a reverter of these settlement funds, the Parties have designated the Legal Aid Society of San Diego, Inc. as the *cy pres* recipient, subject to Court approval. The Legal Aid Society of San Diego provides, among other services, consumer rights education and counseling including education, counseling and advocacy relating specifically to the Telephone Consumer Protection Act. *See* Declaration of Greg Knolls, attached here to as Exhibit D.

## VI.  CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court grant final approval of the settlement and enter the Proposed Order filed concurrently with this Motion.

DATED: February 10, 2012.

REED SMITH LLP

By  /s/  Jordan Yu
Jordan Yu
Attorneys for Defendant
Barclays Bank Delaware

DATED: February 10, 2012.

HYDE & SWIGART

By   /s/   *Joshua B. Swigart*
Joshua B. Swigart
Attorneys for Plaintiffs
Ramon Gutierrez and Clariza Gutierrez

*I, Jordan Yu, hereby certify that the content of this document is acceptable to all persons required to sign this document and that I obtained the authorizations necessary for the electronic signatures of all parties for this document.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

-14-

US_ACTIVE-108573476.2